# M. COLONA SLACUM et al. v. LILLIAN W. JOLLEY.

*Expert Witness—Hypothetical Questions—Workmen's Compensation—Cause of Death—Heat Prostration—Evidence—Right of Removal.*

There is no right of removal in the case of an appeal from the Industrial Accident Commission.                    p. 345

On an issue as to whether the death of a "bus" driver was caused by heat prostration, as a result of his driving, a hypothetical question asked an expert, which assumed that deceased drove the bus from 9:30 A. M. until 5 P. M. on the day preceding the night on which he was taken ill, although the evidence showed that his bus was idle from 11.15 A. M. until 3:15 P. M., was defective.                               pp. 346, 347

The question was also defective in failing to refer to the fact, as shown by the evidence, that deceased drank a quantity of iced tea on the evening of that day, or to refer to what he did during the four hours the bus was idle, or to mention that, after returning home at 5 P. M., he returned to work.    pp. 346, 347

Where the facts are conceded or undisputed, and there is no dispute as to the inference, their legal significance is a matter of law to be determined by the court.                    p. 347

Heat stroke or heat prostration, if caused by unusual or extraordinary conditions in the employment, which cannot be regarded as naturally and ordinarily incident thereto, is compensable.                                        p. 351

In the case of a claim on account of the death of the driver of a "bus," who returned from his work hot and tired, drank a quantity of ice water, and died ten days later, *held* that the evidence was insufficient to show that his death was due to heat prostration, or that, if it was so due, this was the result of conditions in his employment different from those affecting the

general public, or not naturally and ordinarily incident to his employment.　　　　　　pp. 350-353

*Decided June 10th, 1927.*

Appeal from the Circuit Court for Dorchester County (BAILEY, J.).

Claim by Lillian W. Jolley, on account of the death of her husband, Raleigh Jolley, opposed by M. Colona Slacum, employer, and the Aetna Life Insurance Company, insurer. From a judgment in favor of the claimant, and reversing the decision of the Industrial Accident Commission, the employer and insurer appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William D. Macmillan,* with whom were *Harold Tschudi, T. Sangston Insley,* and *William H. Price, Jr.,* on the brief, for the appellants.

*V. Calvin Trice,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This proceeding arises under article 101 of the Code, known as the Workmen's Compensation Act. Raleigh Jolley, a colored man, thirty-seven years old, having a wife and one child, was, on June 4th, 1925, employed as a "bus driver" by Colona Slacum, who operated "bus" lines between Cambridge, Salisbury, and Hurlock, in Maryland. On that day, which was extremely warm, he was engaged in driving a thirty-six horse power Studebaker automobile. In the course of the day he complained of the heat, and, when he returned to his home at five o'clock in the afternoon, he seemed tired and worn, declined to eat anything, complained of being warm, and drank two or three glasses of iced tea and several glasses of iced water. He went back to his work, however, returning to his home at about 9.30 o'clock

the same evening. At that time he complained that he still felt badly, drank more iced tea, and after sitting for a while on his porch went to bed. At about two o'clock A. M. he complained of pains in his stomach. A physician was called, and he continued to treat him until he was removed to the Cambridge Hospital on June 12th, 1925, where he remained until June 14th of the same year, when he died.

On June 25th, 1925, Lillian W. Jolley, his widow, filed a claim for compensation in behalf of herself and her infant child with the State Industrial Accident Commission, on the ground that his death was caused by an accidental injury arising out of and in the course of his employment by Slacum. The claim was resisted by Slacum, and the Aetna Insurance Company, the insurer, and after a hearing was disallowed. The claimant thereupon appealed to the Circuit Court for Dorchester County. While the case was pending in that court the defendant filed a suggestion and affidavit for removal, which the court overruled, and that ruling is the subject of the third exception presented by the record in this case. It may be said in passing, without restating the reasons so often given by this Court, that there was no error in that ruling. *Baltimore v. Kane,* 125 Md. 136; *Wilmer v. Savings & Bldg. Assn.,* 141 Md. 241; *Hoshall v. Hoffacker,* 11 Md. 363; *Geekie v. Harbourd,* 52 Md. 461; *Cooke v. Cooke,* 41 Md. 362.

After the court had overruled the suggestion for removal, a jury was empanelled and sworn to try the following issues, that is to say: (1) "Did Raleigh Jolley, on or about the 4th day of June, A. D. 1925, sustain an accidental personal injury arising out of and in the course of his employment?" (2) "Did the death of Raleigh Jolley result from an accidental personal injury sustained by him on or about the 4th day of June, 1925, arising out of and in the course of his employment?" (3) "Did the death of Raleigh Jolley result from disease or natural causes not connected with any accidental personal injury arising out of and in the course of his employment?" At the conclusion of the trial the jury found their verdict for the claimant on each of the three

issues, and from the judgment on that verdict this appeal was taken.

The record submits three exceptions, of which the first relates to the action of the trial court in overruling an objection to a hypothetical question asked of an expert witness, the second, to the court's rulings on the prayers, and the third, to which reference has been made, to its action in overruling appellants' suggestion for removal.

The controlling question of fact in the case was whether Jolley was overcome by the heat as a result of driving his employer's "bus" on June 4th, 1925. To show that he was, the claimant called Dr. Joseph K. Shriver, a medical expert, and asked him this question: "Assuming that a man in normal health on the fifth day of June, 1925, and operating a motor bus and that it was an extremely hot day and after being in this bus from 9.30 in the morning until after 5 o'clock that evening, and he then complains of suffering from the heat and that he showed the result of weakness and being unwell and that he drank a lot of ice water, more than two glasses, and was taken with pain in the stomach, would you or not in your opinion say that he had heat prostration in that bus?" An objection to that question was overruled and the witness replied: "According to my notion, from what I heard, it was from heat prostration, particularly in the excessive sweating and exhaustion, but the pain did not have anything to do with heat prostration." In *Gordon v. Opalecky,* 152 Md. 536, this Court referred with approval to the statement in *Northern Central Ry. Co. v. Green,* 112 Md. 505, that "a hypothetical question must embrace every material element of the hypothesis founded upon the evidence, and it must not import into the question any element not founded upon the evidence in the case. If it offends in either respect it is defective and it is error to permit such a question to be answered, and if inadvertently admitted over an objection, it is error to refuse a motion to strike out the answer." Testing this question by the rule thus stated, it is manifestly defective and should not have been allowed.

First, because it assumed a fact which not only was not proved, but which was actually contradicted by the evidence, that is, that Jolley was in the "bus" which he was driving from 9.30 in the morning until 5 o'clock in the evening, whereas the evidence showed that he went to work at 7.15 A. M., drove to Hurlock and returned to Cambridge at 9.15 A. M.; that he then left for Salisbury at 9.30, where he was scheduled to arrive at 11.15, and that according to his schedule he should have left there at 3.15. So that, according to the schedule there was a period of four hours during which his "bus" was idle in Salisbury, when there was no occasion for him to be in it. Second, the question omits any reference to the quantity of iced tea which Jolley drank, where he was, or what he did, in Salisbury, or to the fact that he returned to work after he came home at 5 o'clock in the evening.

At the conclusion of the evidence the claimant offered two prayers, which were granted, and the defendants eight, of which the first and second were refused and the others granted. The only important question raised by these rulings is whether the court was right in refusing to direct a verdict for the appellants on the ground that there was in the case no evidence legally sufficient to show that the death of Jolley resulted from an accidental injury arising out of and in the course of his employment. In dealing with that question we are controlled by the rule stated in *Bogatsky v. Swerdlin,* 152 Md. 21, "that in cases where the facts are conceded or undisputed, and there is no dispute as to the inferences to be drawn therefrom, their legal significance is a matter of law to be determined by the court."

Its determination depends, first, upon whether the evidence in the case is legally sufficient to show that Jolley died as the result of heat prostration or a heat stroke directly traceable to his employment, and, second, upon whether such an injury is compensable under the statute in force in this state.

In dealing with the first question, we have felt that the wise and benevolent spirit and purpose of the statute should

not be defeated by any narrow, quibbling, or technical construction, and for that reason we have examined with the most critical care the record in this case, in connection with the very able and careful brief of counsel for the appellee, but after such examination, and after giving the appellee the benefit of any possible doubt as to the inferences to be drawn from the evidence, we have been unable to discover any evidence legally sufficient to show that Jolley died as a result of heat prostration directly traceable to his employment.

In connection with that issue, the claimant offered four witnesses, Dr. Coll, Charles Cornish, Dr. Shriver, and the claimant herself.

The claimant in her testimony stated that her husband was "about the usual height" and weighed about one hundred and eighty or ninety pounds, that when he left his home on the morning of June 4th he seemed to be "perfectly well," that he had not prior to that complained of any disease, that when he returned home at 5 o'clock she had his supper ready, but he said he did not want anything to eat, complained of being warm, and drank two or three glasses of iced tea and several glasses of iced water; that she asked him to stay at home that night, but he said that it was his regular night for work, and he left for his work at about 7 o'clock and returned at about 9.30 P. M.; that he still complained of "feeling bad" and asked for more iced tea, which she gave him; that they sat on the porch for a while and then went to bed; that at about 2 o'clock he aroused her, and complained of pain, and finally called Dr. Coll between 2 and 3 o'clock in the morning; that the only statement he made to her when he came home was that he felt too warm; that at 5 o'clock he appeared tired and worn out, and she thought he was "sort of chilled"; that he was confined to his bed "about Monday"; that for a time, just when she could not say, he became blind; that his body would be perfectly cold, but he would be "wet with sweat"; that he complained of the heat in the "bus," although he had never complained of

it before; that the day was extremely hot; that he first complained of pain when he came home at about 9.30 P. M.; and that the pain appeared to be in his back and stomach and was extremely severe, and the physician gave him morphia to relieve it.

Charles Cornish said that he was also employed as a chauffeur by Slacum; that he knew Jolley and went to work with him on the morning of June 4th; that the day was very hot, it seemed to be "the hottest day"; that he saw Jolley again at about 5 P. M., that at that time Jolley was in his "bus" without any coat on; and he asked him if he "had any trouble," and Jolley answered that he had no trouble but that it was awfully warm; that about 9.30 P. M. he found Jolley looking tired and worn out, sitting beside a fan and complaining about "it being awfully hot"; that he saw Jolley while he was in bed, that he appeared to be "very much in pain," and that on two of these visits Jolley appeared to be unable to see the witness.

Dr. Coll, the attending physician, said that he first saw Jolley at about three o'clock on the morning of June 5th, that at that time his temperature and pulse were normal, and while he was wet with perspiration, it was not that of collapse or shock, that he found Jolley in violent pain, carefully examined him and found no tenderness, that except for the pain he discovered nothing abnormal in his condition, there was no infection, his blood was normal, and that his examination left him with no "opinion" or diagnosis of his trouble; that he attributed the pain to the fact that Jolley drank so much iced water; that he drank "quite a large quantity of that" and seemed to be "of a burnt out stomach"; that a heat stroke would "burn up the fluids of the body," that he attended Jolley at intervals from the 5th of June until his death, knew of the tests made as to his physical condition, and had heard the testimony of his widow and of Cornish, and that, "from all the evidence and the facts presented after his death," in his opinion Jolley died from heat prostration. This witness on cross-examination admitted that he had on different occasions attributed Jolley's

illness to different causes; that he had said that he did not
know what caused his death, and that in fact he did not
know what caused his death; that his statement to the
commission that the "immediate cause of death was apoplexy
with gastric colic and ileocolitis," and that the remote cause
of his death was heat prostration, was based on statements
that he had heard after Jolley's death; that Jolley was never
unconscious, that he did not have a high temperature, but
that for a time he was blind; and that blindness is a symptom
of heat prostration; that in illness caused by "heat stroke,"
the temperature rises sharply and then falls, and collapse
follows; that in treating Jolley he gave him "five or ten"
grains of morphia three times a day, "almost enough to knock
him out," but that that had no effect on his blindness. After
giving this testimony, the witness was asked: "And you
don't know what was the matter with him?" and he replied
"No, sir, absolutely."

Dr. Shriver, the only other witness called by the claimant,
after giving the testimony referred to above, was asked, "Do
you think heat prostration caused his death?" and he
answered "I don't know."

For the defendants, Dr. B. W. Goldsborough and Dr. Guy
Steele, testifying as medical experts upon the testimony in
this case, were of the opinion that while Jolley may have
had heat prostration, his death was due to the rupture of
some abdominal organ. Dr. Gilbert E. Meekins, basing his
opinion upon the same testimony, was unable to say that
Jolley did not die of heat prostration, but said that he had
seen him while suffering from one attack of pain, and his
diagnosis was that there was something wrong with his gall
bladder. Dr. Eldridge Wolff was of the opinion that Jolley's
death was not caused by heat prostration suffered while work-
ing for Mr. Slacum on June 4th, 1925.

In considering the effect of the testimony, it must be
noted that, to entitle the claimant to compensation, it was
necessary that there be adduced from some source affirmative
proof that her husband's death was caused by "an accidental

injury arising out of and in the course of employment."
Article 101, section 65, of the Code.

The appellant contends that "heat prostration" is not
compensable under the Workmen's Compensation Law of
Maryland, because it is not an accidental injury, but in our
opinion that contention goes too far. Subsection 6, section
65, article 101, of the Code, provides that, "injury" and
"personal injury" mean only accidental injuries arising out
of and in the course of employment and such disease or
infection as may naturally and unavoidably result therefrom.
And if heat stroke or heat prostration are caused by unusual
and extraordinary conditions in the employment which can-
not be regarded as naturally and ordinarily incident thereto.
there is no apparent reason why such injuries should not be
compensable. *Schneider's Workmen's Compensation,* secs.
249, 333; 46 *A. L. R.* 1218; 40 *A. L. R.* 402; 25 *A. L. R.*
147; 16 *A. L. R.* 1039; 13 *A. L. R.* 979.

But to entitle the claimant to compensation it was essen-
tial that there be at least some evidence that her husband
died of heat stroke or heat prostration, and that such injury
was occasioned by some unusual and extraordinary condition
in his employment, not naturally and ordinarily incident
thereto, and there is no such evidence in this case.

The testimony of the fact witnesses is clearly insufficient to
show that Jolley's death was due to heat stroke or heat pros-
tration, and both of the medical witnesses called by the
claimant stated positively that they could not say what caused
his death. It is true that Dr. Coll said in one part of his
testimony that from "all the evidence and the facts which
were presented after his death" Jolley died from heat pros-
tration, but he also said later that he "did not know what
was the matter with him." When a witness says in one
breath that a thing is so, and in the next breath that it is
not so, his testimony is too inconclusive, contradictory, and
uncertain, to be the basis of a legal conclusion. And while
Dr. Goldsborough and Dr. Steele thought that he may have
had heat prostration, they also said that it had nothing to do
with his death. Dr. Meekins testified that he could not say

that Jolley had not died from heat prostration, but that testimony was wholly negative, and Dr. Wolff testified that in his opinion Jolley's death was not due to heat prostration suffered while working for Slacum.

But even if we could assume that his death was caused by heat prostration, there is no testimony to show that it was occasioned by his employment. The testimony shows that the day was hot, that Jolley complained of the heat, that he was engaged in driving an automobile without a foot ventilator, that when he returned to his home he looked tired and worn, said he felt badly, complained of the heat in the "bus," and drank a quantity of iced tea and iced water. These facts, separately or together, are insufficient to show that Jolley's condition was caused by his employment, or that the conditions of his employment were different from those affecting the general public in that neighborhood at that time, or that they were unusual or extraordinary, and not naturally and ordinarily incident to the employment. A hot day in June is no unusual thing, and complaints about the weather are not infrequent. Nor is there anything to show that it was hotter in the automobile "bus" than outside of it, and in the absence of evidence to that effect we cannot assume that it was, for it is a matter of common knowledge that persons often drive in automobiles as a relief from the heat of a summer day. It is possible of course that the windshield of the machine was closed and that it was unusually hot in it, but there is not a word of testimony to that effect. Nor can we assume that such a condition existed because there was no foot ventilator in the machine, because it does not appear that such a device was usual, or that it would have cooled the machine, or made Jolley more comfortable. If these facts existed, they could have been proved, but in the absence of proof we cannot assume them. Nor can we assume from his physical condition alone that it was due to his employment. It is true that Jolley said that it was hot in the "bus," but it is conceded that it was also hot elsewhere in that neighborhood on that day, and he also complained of the heat when he was not in the "bus."

Such facts are in our opinion legally insufficient to warrant the inference (1) that the conditions under which Jolley pursued his employment were different from those which affected the general public, or (2) that on the day in question there was anything of an extraordinary or unusual character in such conditions not naturally and ordinarily incident to the employment.

For these reasons the trial court should have granted the defendant's first prayer withdrawing the case from the jury, and as a result of this conclusion the judgment appealed from must be reversed without a new trial, and it becomes unnecessary to refer to the court's rulings on the other prayers.

*Judgment reversed, with costs.*