566 A.2d 497

**Dante TERRANOVA**

v.

**BOARD OF TRUSTEES OF the FIRE AND POLICE
EMPLOYEES RETIREMENT SYSTEM OF
BALTIMORE CITY.**

**No. 386, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 4, 1989.

Benjamin Lipsitz, Baltimore (John E. Sibrea and Sibrea and Bloom, on the brief), Towson, for appellant.

John J. Carlin (Neal M. Janey and William R. Phelan, Jr., on the brief), Baltimore, for appellee.

Argued before WILNER, ALPERT and CATHELL, JJ.

CATHELL, Judge.

The question presented on this appeal is whether the Circuit Court for Baltimore City erred in affirming the decision of the Panel of Hearing Examiners (Panel) of the Board of Trustees of the Fire and Police Employment Retirement System of the City of Baltimore (Board) that the appellant was fit to return to his duties as a police officer in the Baltimore City Police Department.[1] The circuit court found that the Panel decision was supported by substantial and competent medical evidence and "affirmed" the Panel examiner. The only issue now raised by appellant is that the trial court erred in so finding.

## The Facts

In 1971 appellant was found by the Board[2] to have suffered a work-related mental disability and was placed on disability retirement. He was periodically examined from

---

1. The Board of Trustees of the Fire and Police Employees Retirement System is statutorily authorized to utilize a Panel of Hearing Examiners to conduct hearings and to make findings and determinations. These hearings are, by statute, adversarial in nature with the retirement claimant and the Board of Trustees as adversaries. The determination of the hearing examiner is appealable to the circuit court by either party.

2. The statute in effect in 1971 did not provide for a Panel. Determinations were then made by the Board.

that date through 1979.[3]   Until 1981 he had consistently been found to be unfit for reemployment.

In 1981 he was, for the first time, examined by Dr. Potash, a psychiatrist retained by the Panel.   Dr. Potash reported to the Board, that for the reasons stated in his report, the appellant was then fit to return to full employment as a police officer.   Pursuant to the statute the police department subsequently offered to place the appellant back on police duty, stating that the offer was:

> [C]ontingent upon the conduct of a physical and psychological examination to insure your capability to perform full police duties.

> Upon determination by departmental physicians that you are ... psychologically qualified, a date for your return to duty will be established.

Two police department physicians, Dr. Teitlebaum and Dr. Wilfson, after reviewing the available records and examining the appellant, diagnosed appellant as having a paranoid psychosis with paranoid preoccupation in respect to the police department.   They reported to the commissioner of the department that the appellant was completely disabled for any employment with the police department.

The retirement statute provides that when the Panel's and the department's physicians do not concur, the Panel hearing examiner must schedule and hold a hearing to

---

**3.** The statute creating and governing the operation of the retirement system in which appellant is a retiree is Art. 22 of the Baltimore City Code.   The matter at issue primarily concerns Art. 22, § 34 entitled "Benefits" and in particular subsection (g) entitled "Re-examination of beneficiaries...."   When, in this opinion we refer to the statute, we are referring to the 1983 Repl.Vol. of the Baltimore City Code with amendments through 1986.   We have reviewed the prior statutes and ordinances from 1966 to 1983 and perceive no inconsistent prior provisions existing in or since 1971 that might affect our decision in the case at bar.   We note that after 1971 through mesne ordinances the legislative body of Baltimore City has specifically authorized a Panel of Hearing Examiners to perform certain functions that had been apparently performed generally by the Board.   (In one ordinance they were called the Panel of Claims Examiners).

resolve the conflict and to "determine the fitness of the retiree to perform his former duties." The Panel then submits its determination to the department involved. If, thereafter, an employee who has been determined to be fit refuses to accept an offer of employment, "all rights in and to his pension shall be revoked.... [4]"

The first hearing before the Panel was held on March 29, 1982, by Examiner O'Brien. Appellant was then determined to be fit to resume his duties as a police officer. Appellant appealed to the circuit court. That court, apparently upon agreement of the parties, remanded the case for additional testing and to permit the appellant to undergo certain psychological testing he had earlier declined to take.

The rehearing was held in April of 1986. The hearing examiner then again determined that the appellant was fit to resume police duties "as earlier determined on June 9, 1982." On May 16, 1986, an appeal was taken to the circuit court. There the case languished for two and a half years until February of 1989, when Judge Ward rendered his decision.

---

4. In the case sub judice after the Examiner's final determination of fitness the department has apparently not made any offer of reemployment and appears to be in violation of the spirit, if not the body, of the statute.

In a letter dated May 20, 1986, Commissioner Bishop Robinson informed the Baltimore City Solicitor, Benjamin Brown, that the Board had found appellant fit for employment and that the police department strongly disagreed. He requested that he be provided with recommendations. Responding, the City Solicitor stated that it was that office's opinion that the determination of the panel of hearing examiners was a final administrative decision and "must be complied with." The City Solicitor, however, recommended "that the status quo be maintained" pending the appeal to the circuit court. We have not been made aware of any steps taken by the police department to comply since the circuit court decision, and the record is bereft of any indication as to whether the police department has yet complied with the statute, by offering appellant reemployment. If no such offer has been made, we must presume that appellant has not had his retirement status and pension revoked, there not having been any offer of employment for him to refuse.

## The Findings

The issue before the Panel was whether the appellant was *then* fit to resume his duties as a police officer. The record reflects that there was conflicting medical evidence on that issue. At the 1982 hearing the hearing examiner made certain findings of fact:

—That in 1975 the appellant began employment with the District Court and was at the time of the hearing a District Court constable responsible for serving civil process; that he had been employed full time in that capacity and that in the last year prior to the hearing the appellant had earned $16,000 from that occupation. The examiner also found that the District Court had rated appellant's performance as satisfactory. The examiner found that the appellant demonstrated a work capacity of a well individual. He further found that it would be unreasonable to determine that appellant continue to suffer from his initial 1971 illness and that the situation that precipitated that prior illness no longer existed.

—The examiner also found that he was most persuaded by the factual findings and medical conclusions of Dr. Potash; that the conclusion reached by Dr. Teitelbaum, the police department's physician, that appellant was not fit was made on the basis of information provided by the appellant, and that such information differed from the information appellant had given Dr. Potash; that Dr. Teitelbaum's report disclosed no knowledge or consideration of the appellant's employment history.

—The examiner further found that the appellant refused to submit to certain psychological testing requested by the panel's examining physician, Dr. Potash.

Subsequent to the rehearing held after the circuit court remand, the hearing examiner, in addition to his original findings, found "that the appellant had undergone a psychological testing he had previously refused to take"; that some special features of the test were validity scales representing checks on carelessness, misunderstanding, and malingering; that if the scores on the test exceeded a certain

value the record is considered invalid; and that the appellant's score far exceeded that specific level. That Dr. Potash, the panel's physician, and Dr. Merrill, the appellant's treating physician, disagreed in their interpretation of the test results; that Dr. Potash was of the opinion that the appellant's test results indicate that appellant was attempting to make himself appear extremely ill and thus invalidate the test, and that Dr. Merrill was of the opinion that the test results were caused by the confused, disorganized or delusional state of the appellant.

The examiner further found that many of the appellant's current claimed complaints were only conveyed to Dr. Merrill, his treating physician, and to Dr. Teitelbaum, the department's physician, after Dr. Potash's 1981 report that appellant no longer suffered from a disabling psychiatric impairment. The examiner found an inconsistency in Dr. Merrill's testimony in that the doctor initially said that the appellant was being regularly treated by him in the two-year period prior to April 1981; that when he was asked to check his records, in light of the initial information furnished Dr. Potash by appellant, that appellant had not seen a doctor in almost two years, Dr. Merrill then changed his testimony to reflect he had not seen the appellant during that period; that during this two-year period with no treatment or medication the appellant performed his job efficiently and at a life style that was quite normal. The examiner further stated that in his opinion Dr. Merrill based much of his opinion on appellant's state of mind "primarily on what Mr. Terranova tells him"; and that the examiner had problems with the credibility of Dr. Merrill, arising at least in part from the inconsistency and on the bases used to formulate his opinion.

The examiner further found that the appellant had impressed the examiner by his ability to seek, find and perform successfully in significant employment positions. He had also impressed the examiner by his ability to testify clearly, succinctly and intelligently at both hearings.

The examiner then found that, as between the two medical opinions, i.e. Dr. Potash's and that shared by Dr. Merrill and Dr. Teitelbaum, Dr. Potash's conclusion was more persuasive. The examiner thus weighed conflicting evidence, assessing the credibility of the witnesses in the process.

## The Law

■ The appellant first suggests that the retirement ordinance in effect when appellant retired may not have contained an explicit direction as to the nature and scope of judicial review of the Board's actions. He suggests that in such case, our review can be on a de novo basis instead of a substantial evidence basis citing *Firestone Tire and Rubber Co. v. Bruch,* — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). We decline to do as appellant suggests. We explain.

The Court of Appeals addressed this issue in 1945 in *Heaps v. Cobb,* 185 Md. 372, 45 A.2d 73 (1945), which also involved the Board of Trustees of the Employees Retirement System of Baltimore City. It stated at 379, 45 A.2d 73:

> The appellant Board is one of those tribunals created by an ordinance which does not expressly provide for an appeal from its decisions, and, largely because of that omission, the appellant is claiming for its decision ... a finality which would place it [the agency] beyond the reach of the Court....

At 380, 45 A.2d 73:

> Where the statute ... makes no provision for judicial review, an implied limitation upon an administrative board's authority is that its decisions be supported by facts and that they be not arbitrary, capricious or unreasonable.

> The doctrine is well illustrated in the review of this subject by ... these words: "The general rule ... is that their findings of fact are final if there is substantial evidence to support them. With respect to the issues of

fact, the reviewing court examines the evidence taken by the administrative agency, not to re-weigh it, not to substitute the Court's judgment ..., but to determine whether the agency acted rationally, that is to say, that it did not arrive at its conclusion arbitrarily." [citations omitted]

The standard in *Heaps* has been followed consistently by the appellate courts of this State. The *Heaps* language was restated in *Adams v. Board of Trustees*, 215 Md. 188, 194, 137 A.2d 151 (1957), and as recently as April of 1989 we cited *Heaps* in *Crowder v. City of Baltimore*, 79 Md.App. 291, 299, 556 A.2d 726 (1989), *decided on other grounds*. Accordingly, the suggestion for de novo review must be rejected.

We restated the standard of review that is applicable to appeals of the determinations of administrative agencies in *Vavasori v. Commission on Human Relations*, 65 Md. App. 237, 251, 500 A.2d 307 (1985).

The substantial evidence standard of review requires only that the reviewing court examine the agency's decision to determine whether reasoning minds could reasonably reach that conclusion by direct proof or by permissible inference from the facts and the record before the agency. In determining whether reasoning minds could reasonably reach the conclusion, we must view the Commission's decision in a light most favorable to it. The Commission's decision should be viewed as "prima facie correct" and it carries with it the presumption of validity. This Court may not substitute its judgment for the expertise of the Commission. [citations omitted]

The Court of Appeals said in *Annapolis v. Annap. Waterfront Co.*, 284 Md. 383, 397, 396 A.2d 1080 (1979), that: "Where the scope of review is not specified by statute, a corollary element in judicial review of administrative decisions for arbitrariness is a determination of whether the findings of the board were supported by substantial evidence...." In a footnote, the Court quoted from the

opinion of *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 309, 236 A.2d 282 (1967):

> Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole ... [or] ... fairly debatable ...—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under ... [either] ... of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.

*Annapolis* at 397–98 n. 8, 396 A.2d 1080.

In *Balto. Lutheran High Sch. v. Emp. Sec. Adm.*, 302 Md. 649, 661, 490 A.2d 701 (1985), the Court of Appeals, citing *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 236 A.2d 282 (1967) stated:

> The substantiality of the evidence is the common denominator of the scope of judicial review with respect to all administrative agencies.

That court, speaking of Judge Eldridge's opinion in *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 390 A.2d 1119 (1978), said:

> He [Judge Eldridge] observed that "substantial evidence" has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... The reviewing court also must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity. Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent infer-

ences from the same evidence can be drawn, it is for the agency to draw the inferences.

*Balto. Lutheran High Sch.* at 662–63, 490 A.2d 701.

In the present case there was evidence before the examiner that appellant had gone two years without treatment and had functioned normally during that period. There was evidence by Dr. Potash that in the taking of certain tests the appellant attempted to make himself appear ill, i.e. to slant artificially the test results. While another doctor interpreted the test results differently, the panel examiner accepted Dr. Potash's interpretation of the test validity scale. Dr. Potash found that in the taking of the test the appellant had attempted to make himself look extremely disturbed for some reason or did not cooperate, and purposely responded in a random or irrelevant manner. There was also evidence before the agency that the appellant's lifestyle was normal. The Panel examiner had evidence of, and the examiner was impressed with, "the initiative and know how of the beneficiary displayed in seeking, finding and performing successfully in a well paying jobs in practically all the years following his disability retirement." The examiner was also impressed by the appellant's poise and ability to testify "succinctly" and "intelligently" at the hearings.

While there were conflicting reports of the normality of appellant's lifestyle, that of the appellant and his treating physician and that of Dr. Potash, the examiner gave much weight to that of Dr. Potash. The Panel found that the nature of appellant's work as a District Court constable serving civil papers also evidenced his fitness for reemployment.

In respect to the issue of witness credibility in administrative proceedings, we look first to the workmen's compensation case of *Slacum v. Jolley*, 153 Md. 343, 138 A. 244 (1927). The Court of Appeals, in discussing discrepancies in a doctor's opinion, stated at 351, 138 A. 244:

When a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory, and uncertain, to be the basis of a legal conclusion.

What was stated as dicta in *Slacum* was then used by the Court of Appeals as authority in *Fid. & Guar. Co. v. Baking Co.*, 172 Md. 24, 33, 190 A. 768 (1937), where, when it was discussing conflicting testimony of a witness, the court said: "Such testimony has no probative force or evidential value. *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244."

In *Foble v. Knefely*, 176 Md. 474, 484, 6 A.2d 48 (1939) (erroneously cited by appellees as a 1966 case), the Court of Appeals restated the rule in *Slacum* in distinguishing the facts in the two cases. In *A.H. Smith Sand and Gravel v. Dep't*, 270 Md. 652, 667, 313 A.2d 820 (1974) (erroneously cited by appellees as being reported at 270 Md. 820), the Court of Appeals said "[t]his Court has observed that an expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant." (citations omitted) We said about conflicting witness testimony in *Commissioner v. Cason*, 34 Md.App. 487, 509, 368 A.2d 1067 (1977), that "[t]o believe Roye and Spangler was to disbelieve Sgt. Cason. To believe Sgt. Cason was to disbelieve Roye and Spangler. The issue was credibility, and nothing more. Direct evidence of an ultimate fact may be true, or it may be untrue, but it surely cannot be called insubstantial."

In the case at bar the appellant's expert said that he was not fit. The police department's doctors, who partially based their opinions upon the opinion of appellant's physician, said he was not fit. Dr. Potash said, in essence, that appellant was misrepresenting his condition and/or malingering, and for that reason, and other reasons stated, was fit for police employment. The fact that the opinions of three doctors go one way and the opinion of a fourth doctor another does not make the report of that fourth insubstantial, especially when, as here, credibility of the

respective physicians has played an important role in the Panel's decision. Had the examiner found conversely, that finding also might have been supported by substantial evidence.

The facts in *Comm'r v. Cason, supra,* involved the issue of judicial review of the actions of administrative agencies in a case where the agency's decision had been reversed by the trial court. In that case we extensively discussed the major Maryland cases dealing with issues involving the scope of judicial review of administrative decisions. We stated: "We have read the many cases in federal and state courts cited in the briefs. In general they demonstrate that the same standards for judicial review of the actions of administrative agencies prevail throughout the country." *Id.* at 504, 368 A.2d 1067. We restated the rules that guided us in our deliberations then and guide us now:

A reviewing court may, and should, examine any inference, drawn by an agency, of the existence of a fact not shown by direct proof, to see if that inference reasonably follows from other facts which are shown by direct proof. If it does, even though the agency might reasonably have drawn a different inference, the court has no power to disagree with the facts so inferred.

A reviewing court may, and should, examine any conclusion reached by an agency, to see whether reasoning minds could reasonably reach that conclusion from facts in the record before the agency, by direct proof, or by permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion.

A reviewing court may, and should, examine facts found by an agency, to see if there was evidence to support each fact found. If there was evidence of the fact in the record before the agency, no matter how conflicting, or how questionable the credibility of the source of the evidence, the court has no power *to substi-*

*tute its assessment of credibility for that made by the agency, and by doing so, reject the fact.*

*Id.* at 508, 368 A.2d 1067 (emphasis added).

In *Annapolis, supra,* the Court, referring to *Cohen* "Some Aspects of Maryland Administrative Law" 24 Md.L. Rev. 1 (1964), gave an example similar to the factual situation of our present case when the Court said:

Another commentator presented the following illustration of the operation of the rule:

[A]ssume that in an agency hearing five witnesses testify on one side of a proposition, and one witness testifies on the other. In its findings, the agency states that it does not doubt the credibility of any of the witnesses, but that it is relying on the testimony of the one witness and disregarding that of the five. Under the substantial evidence rule, a court would be required to uphold such findings. [Cohen, *supra,* at 38.] Cited in *Annapolis,* 284 Md. at 399 [396 A.2d 1080].

While, were we the finder of fact we might well have found to the contrary, there was substantial evidence supporting the examiner's determinations. The weighing of the evidence and the assessment of witness credibility is for the finder of fact, not the reviewing court. A reasoning mind could have reached the decision of the agency and could reasonably have done so. Thus, the trial court did not err in rejecting the appellant's insubstantial evidence arguments. *Robinson v. Montgomery County,* 66 Md.App. 234, 503 A.2d 275 (1986).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.