994 A.2d 514

FIRE AND POLICE EMPLOYEES' RETIREMENT SYSTEM OF The CITY OF BALTIMORE

v.

Amy MIDDLETON.

No. 02503, Sept. Term, 2008.

Court of Special Appeals of Maryland.

May 6, 2010.

Herbert Burgunder, Jr. and William R. Phelan, Jr. (George A. Nilson, City Solicitor on the brief), Baltimore, MD, for Appellant.

Duane A. Verderaime (O'Connor & Verderaime, P.C., on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, MEREDITH and MATRICCIANI, JJ.

MATRICCIANI, J.

Appellant Fire and Police Employees' Retirement System of the City of Baltimore appeals the reversal, by the Circuit Court for Baltimore City, of its decision to grant non-line-of-duty disability retirement to appellee, Amy Middleton. The appellant presents one question for our review:

I. Did the court err in reversing the administrative decision to award non-line-of-duty disability because the administrative decision was supported by substantial evidence in the record and the hearing examiner correctly applied the law?

Finding substantial evidence to support the hearing examiner's decision, we shall reverse the judgment of the circuit court.

## Facts

On July 4, 2006, the appellee, a Baltimore City police officer, was working crowd control at the Inner Harbor Park in Baltimore when she received a "Signal 13" call, indicating that a fellow officer needed immediate assistance. She described her response as follows:

[S]everal of us, pretty much everybody that was available by foot, took off. It . . . required me to go down a set of steps,

jump over some walls at Harborplace ... down the curb across the street, up a curb. And then there was just a wall of people, [who] ... were pushing and shoving. People were reaching for me ... somebody came across through me and I pushed their, grab[bed] their arm and pushed them aside.

The appellee did not reach her destination before the call was cancelled, and she returned to her post. After returning to her post, the appellee started to feel pain in her lower back.

The appellee had severe pain the following morning and informed her sergeant that she needed to visit the clinic at Mercy Hospital. The doctor examined her and recommended that she be placed on light duty with "no suspect apprehension, no prisoner contact ... [she should] be able to change positions at will if needed." The appellee remained on light duty and under the care of the doctors at Mercy until September 11, 2006, when she was released to full duty.

The appellee remained on full duty until March 15, 2007, when she reported to Mercy complaining of lower back pain that she had noticed two days earlier after she had been baking cookies at home. The pain spread to her right leg at some point thereafter. As a result of these symptoms the medical staff scheduled an MRI for March 19, 2007, and advised the appellee to use her medications and ice as needed.

On June 13, 2007, Dr. Mohammed H. Zamani conducted an independent medical evaluation and concluded that the appellee was capable of working without restrictions. The examination was performed on behalf of the City of Baltimore in connection with the appellee's worker's compensation claim arising from the incident on July 4, 2006. In the aftermath of the March 2007 hospital visit, the appellee was seen by three other doctors between August 2007 and March 2008, all of whom opined that her medical condition was chronic in nature and prevented her from performing the essential functions of a police officer.

On November 13, 2007, the appellee applied for line-of-duty disability. On April 28, 2008, a hearing examiner from the

Fire and Police Employees' Retirement System held a hearing to determine whether the appellee was eligible for line-of-duty disability. On May 8, 2008, the hearing examiner issued a written decision in which the examiner denied line-of-duty disability retirement but awarded non-line-of-duty disability retirement to the appellee. The examiner found:

[T]he Claimant did prove by the preponderance of the evidence that she has suffered an illness or injury of such a nature that she is totally and permanently incapacitated for the further performance of the duties of her job classification as a police officer[.] However, the Claimant did not prove by the preponderance of the evidence that her disability was a result of an injury arising out of or in the course of her duties as a ... [p]olice [o]fficer. The Claimant was completely discharged in September 2006 with full range of motion and no complaints as a result of the accident of July 4, 2006. Dr. Zamani does not indicate the Claimant's complaints are a result of the July 4, 2006 incident, nor does Dr. Halikman indicate the injury occurred as a line of duty incident. There was no treatment from September 2006 until March 2007. The Claimant specifically noted that she first noted pain to her lower back and numbness to her feet while baking cookies in the kitchen. Diagnostic tests were contradictory and therefore, inconclusive as to the cause of the Claimant's injury ... [I]t is the opinion of the Hearing Examiner that the Claimant recovered from her injury of July 4, 2006 and therefore her complaints of March 2007 were not a result of a line of duty incident.

On November 20, 2008, the Baltimore City Circuit Court held a judicial review hearing and reversed the decision of the hearing examiner. The court remanded the case with instructions to grant the appellee's application for line-of-duty retirement. The appellant timely noted this appeal.

## I.

The appellant contends that the circuit court erred in reversing the administrative decision, arguing that the stan-

dard of review is extremely narrow for an administrative decision. Furthermore, the appellant argues that the decision of the hearing examiner was supported by substantial evidence and was not based on prejudicial legal error.

The appellee contends that the hearing examiner's decision was not supported by the record and was therefore erroneous. The appellee contends that, although she reached maximum medical improvement by September 11, 2006, she never recovered fully from the incident on July 4. The appellee also argues that the hearing examiner erroneously relied on the cookie-baking incident as an explanation for the recurrence of pain that ultimately forced her to retire.

 Our role in reviewing an administrative decision is precisely the same as that of the circuit court. *Bd. of Trs. for the Fire & Police Emples. Ret. Sys. v. Mitchell,* 145 Md.App. 1, 8, 800 A.2d 803 (2002). We must presume that a decision made by an administrative body is prima facie correct. *Marsheck v. Board of Trustees of the Fire & Police Employees Retirement Sys.,* 358 Md. 393, 402, 749 A.2d 774 (2000). We must limit our review of a final decision by an administrative agency to determine whether the agency had substantial evidence to support its decision and whether that decision is free from prejudicial legal error. *Id.*

 In applying the substantial evidence test, we must decide whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. *Md. Aviation Admin. v. Noland,* 386 Md. 556, 571, 873 A.2d 1145 (2005) (citations omitted). We will refrain from making our own findings of fact or substituting our judgment for that of the agency if the record contains substantial evidence supporting the agency's decision. *Id.* We have no power to substitute our assessment of credibility for that of the agency if there was evidence to support the findings of fact in the record before the agency. *Terranova v. Board of Trustees,* 81 Md.App. 1, 13, 566 A.2d 497 (1989). However, we will not uphold the agency's order unless it is sustainable on the agency's findings of fact and for the reasons stated by the agency. *United*

*Parcel Serv. v. People's Counsel,* 336 Md. 569, 586, 650 A.2d 226 (1994).

In addition to the principles which normally guide our review of an administrative decision, the Baltimore City Code provides a statutory standard of review for decisions made by a hearing examiner from the retirement system. The Retirement Act, Baltimore, Maryland City Code (Baltimore City Code) art. 22, §§ 33(*l*)(12) (1983 Repl.Vol. & 1995 Supp.), states that a final determination of a hearing examiner is presumptively correct and may not be disturbed on appeal unless it is arbitrary, illegal, capricious or discriminatory.

Under § 34(e–1)(1) of the Baltimore City Code, line-of-duty disability benefits are available for any member whom the hearing examiner has determined to be totally and permanently incapacitated and thus unable to further perform the duties of his or her job classification. An applicant for line-of-duty disability benefits must also prove that the total and permanent incapacitation was the result of an injury arising out of and in the course of the actual performance of duty. We have explained the difference between line-of-duty disability and non-line-of-duty disability as such:

> If the injury arose out of or in the course of the actual performance of duty, then the claimant who is totally incapacitated is entitled to special disability benefits; if the injury was caused by any other means, then the claimant who is totally incapacitated is entitled to ordinary disability benefits.

*Marsheck,* 358 Md. at 410, 749 A.2d 774. The applicant has the burden of proving by a preponderance of the evidence that the disability was the result of an injury arising out of and in the course of the actual performance of duty. Baltimore City Code, Art. 22, § 33(*l*)(10).

The hearing examiner determined that the appellee was disabled, but not due to an on-the-job injury. The hearing examiner relied on the fact that neither Dr. Halikman nor Dr. Zamani indicated that the injury occurred as a result of a line-of-duty incident. With respect to Dr. Halikman's report, the

hearing examiner's factual conclusions are simply not accurate. Dr. Halikman noted in his report that "Ms. Middleton described being injured in a line-of duty accident of July 4, 2006." He also noted that she described a gradual recurrence of her pain and that she "[gave] no history of any other line of duty injuries of any significance." Moreover, the appellant has conceded the fact that, according to his brief, "[t]here was medical opinion evidence from Dr. Halikman . . . to the effect that Off. Middleton's pain in 2007 was caused by the incident at the Inner Harbor on July 4, 2006."

The hearing examiner also found that Dr. Zamani, who examined the appellee on behalf of the city in June of 2007, did not indicate that her complaints were a result of the accident on July 4. Dr. Zamani described two separate incidents in his report: July 4, 2006 and May 22, 2007. The May 22 incident was described as such: "[The appellee] reports sitting in the office and when trying to get up felt pain and pop in the lower back with pain radiating to the upper back." The summary/discussion section of Dr. Zamani's report is as follows:

> The examinee, according to history and review of the file was involved in the above dated accident. There was just some struggling and pushing and no fall and no radicular pain[.] She received rather extended care and treatment and was on light-duty for awhile[.] She was discharged from the care of PSI with maximum medical improvement on September 11, 2006 . . .
>
> On May 22, 2007 when standing up she had some pain in the neck and back[.] The examinee currently has no complaints regarding the neck and the examination of the neck is quite normal[.]
>
> As far as the back is concerned, by x-ray she does have some scoliosis and this is curvature of the spine and degenerative changes and loss of disc space, as well as pseud-oarthroses[.]
>
> The combination of all, and being somewhat overweight and multi pregnancies and cesarean section make the abdominal

wall muscle somewhat weak, and is responsible for the current problem[.]

I feel the examinee has reached maximum medical improvement from July 4, 2006 and May 22, 2007 accidents[.] The current problem, scoliosis and congenital abnormality is preexisting and the main source of the back discomfort . . .

The examinee is capable of working and doing activity as usual without any restriction[.]

■ A reasonable mind could conclude from this report, as the hearing examiner did, that congenital abnormalities caused the appellee's disability. Although a claimant is not required to show that the line-of-duty injury is hermetically sealed from any pre-existing condition or prior injury, *Hersl v. Fire & Police Employees Retirement System,* 188 Md.App. 249, 268, 981 A.2d 747 (2009), the hearing examiner has discretion to accept any explanation for a disability which is supported by substantial evidence. Indeed, Dr. Zamani does not indicate that the appellee is disabled, merely that she has continuing back pain and he mentions the appellee's pre-existing medical conditions as the main source of the back discomfort.

We dealt with a similar question of causation in *Eberle v. Baltimore County, Maryland,* 103 Md.App. 160, 652 A.2d 1175 (1995). In that case, Mr. Eberle was working as a meat-cutter and sustained a work-related injury to his right knee. *Id.* at 161, 652 A.2d 1175. He later obtained employment with the Baltimore County Government, and began his career with a clean bill of health and no work restrictions. *Id.* at 162, 652 A.2d 1175. While working for the County, Mr. Eberle sustained a serious knee injury which resulted in the filing of a workers' compensation claim and the payment of temporary total disability benefits. *Id.* Mr. Eberle returned to work for the county after the knee injury, although he was unable to work in his old job as a truck driver. *Id.* at 163, 652 A.2d 1175. Eventually, he found that he could not stay on his feet for any period of time and as a result he applied for accidental

disability retirement benefits.[1] *Id.* The Board of Appeals found that Eberle suffered from degenerative arthritis in his knees and thus he did not meet the burden of proving the causal connection between his present disability and the two accidents he sustained at work. *Id.* at 165, 652 A.2d 1175.

In *Eberle,* we stated that in order for an injury to be accidental under the Baltimore County Code, it must result from some unusual strain or exertion or some unusual condition because the statutory definition of accidental did not include unexpected results not produced by accidental causes. *Id.* at 170, 652 A.2d 1175. Therefore, an unexpected result attributable to a predisposition to a pre-existing physical condition was not an accidental injury. *Id.* We held:

> No medical report indicated that Eberle's disability was caused by his injuries at work. Neither did any report specifically conclude that Eberle would have suffered this disability in the absence of these injuries. Based on the medical reports that were riddled with references to a preexisting degenerative arthritis problem in addition to hypertension and a chronic overweight problem, it was not error for the Board of Appeals to conclude that Eberle's disability was not the natural and proximate result of the accidental injuries he suffered.

*Id.* at 174–75, 652 A.2d 1175.

The facts in this case are similar to those in *Eberle.* Both the appellee and Eberle were diagnosed with pre-existing degenerative conditions. Both suffered accidents at work that exacerbated these problems and eventually rendered them unable to work in the same capacity as they had before the

---

**1.** Baltimore County's statutory framework for accidental disability retirement benefits in *Eberle* was nearly identical to Baltimore City's. *Id.* at 169, 652 A.2d 1175. These benefits were available to a member who is "totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on his part[.]" *Id.* This language, in turn, is practically the same as that of § 34(e–1)(1) of Article 22 of the Baltimore City Code, which addresses line-of-duty disability benefits for fire and police employees.

accident. As in *Eberle*, we are convinced that there was relevant and substantial evidence from which a reasonable mind could conclude that the appellee's disability was not the result of the injuries sustained in the course of duty.

To support her position, the appellee relies on *Hersl v. Fire & Police Emples. Ret. Sys.*, 188 Md.App. 249, 981 A.2d 747 (2009), where we reversed the decision of the Circuit Court for Baltimore City and remanded for entry of an order awarding the appellant a line-of-duty pension. *Hersl* is distinguishable from the instant case. In *Hersl*, two doctors knew of a fireman's pre-existing heart condition and each independently concluded that he was permanently disabled from performing the duties of a firefighter based on line-of-duty injuries rather than the heart condition. *Id.* at 264, 981 A.2d 747. Furthermore, the hearing examiner's conclusion was predicated on an error of law whereby the examiner substituted his opinion for that of the doctor as to the permanency of the line-of-duty injuries suffered by the firefighter. Here, unlike in *Hersl*, the hearing examiner's conclusion is supported by substantial evidence in the form of Dr. Zamani's expert opinion, which constitutes evidence that the injuries sustained on July 4, 2006, were not permanent, despite other medical evidence to the contrary.

We dealt with a similar split in expert opinions in *Terranova v. Board of Trustees*, 81 Md.App. 1, 566 A.2d 497 (1989). The appellant cites to this case to support its argument that the opinion of one doctor, even if it differs from several other doctors, is enough to sustain an administrative decision. In *Terranova*, we held that "the fact that the opinions of three doctors go one way and the opinion of a fourth doctor another does not make the report of that fourth insubstantial." *Id.* at 11–12, 566 A.2d 497. The contrarian opinion of the fourth doctor was especially substantial in *Terranova* because the credibility of the respective physicians played an important role in the panel's decision. In preferring Dr. Zamani's report here, the hearing examiner shows that she found it more credible and that she viewed it as substantial.

██ We are not permitted to disturb the hearing examiner's assessment of credibility unless that assessment is arbitrary, illegal, capricious or discriminatory. The hearing examiner's decision is none of the above. The hearing examiner found that the appellee was completely discharged from the hospital's care in September 2006 with full range of motion and no complaints as a result of the accident. The doctor suggested that she continue with her home exercises and stretches after she was discharged in September 2006, but no further follow up was required. The appellee did not undergo formal medical treatment from September 2006 until March 2007. These factual findings were used to buttress the ultimate conclusion by the hearing examiner that the recurrence of pain in 2007 was not attributable to the incident on July 4. The inferences drawn by the hearing examiner are supported by a fair reading of the record. Therefore, we reverse the decision of the circuit court and remand the case to that court for the entry of judgment in favor of the appellant.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF JUDGMENT IN FAVOR OF APPELLANT.**

**COSTS TO BE PAID BY APPELLEE.**