800 A.2d 803

# BOARD OF TRUSTEES FOR THE FIRE AND POLICE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE,

v.

**Deborah MITCHELL, Personal Representative of the Estate of James C. Mitchell, Jr.**

**No. 02292, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 14, 2002.

2

**4**

Avery M. Muller, Special City Solicitor (Frank C. Derr, Deputy City Solicitor and Victor D. Sobotka, Associate City Solicitor, on the brief), Baltimore, for appellant.

Alex S. Katzenberg, III (Cohen, Snyder, Eisenberg & Katzenberg, P.A., on the brief), Baltimore, for appellee.

Argued before SONNER, DEBORAH S. EYLER and KRAUSER, JJ.

KRAUSER, Judge.

The principal issue before us is whether cancer, resulting from occupational hazards, can constitute an "injury" under Article 22, §§ 29–45 of the Baltimore City Code, 1976 Edition ("Retirement Act"). Our resolution of that issue is the first step in determining whether appellee, Deborah Mitchell, personal representative of the Estate of James C. Mitchell, Jr.,[1] is

---

1. Mitchell died after the administrative hearing of December 16, 1998. His wife, Deborah Mitchell, is the personal representative of his estate and, in that capacity, has replaced her husband as the appellee in this case.

entitled to receive special disability pension benefits under the Retirement Act. The second and final step—the determination of whether appellee's claim is barred by the statute of limitations—must await further proceedings below.

To obtain special disability benefits, Mitchell filed an application with the Board of Trustees for the Fire and Police Employees Retirement System of the City of Baltimore, appellant, claiming that pancreatic cancer, which had rendered him totally and permanently disabled, was the result of work-related hazards. In accordance with § 33($l$) of the Retirement Act, an administrative hearing was held on Mitchell's application. At that hearing, appellant agreed that Mitchell was "a hundred percent disabled from being a firefighter" and advised the hearing examiner that Mitchell was currently receiving ordinary disability benefits.[2] Thereafter, the examiner awarded Mitchell special disability benefits.

Challenging that result, appellant filed a petition for judicial review in the Circuit Court for Baltimore City, claiming that the examiner had failed to make findings of fact as required by law. The circuit court agreed and remanded the case with instructions for the examiner to do so. The examiner did and reaffirmed its earlier decision. Appellant then filed a second petition for judicial review. Following a hearing on that petition, the circuit court affirmed the decision of the examiner. Appellant then noted this appeal.

Appellant presents two issues for our review. They are:

---

**2.** In *Mayor of Baltimore v. Hackley*, 300 Md. 277, 289, 477 A.2d 1174 (1984), the Court of Appeals described the difference between ordinary disability benefits and special disability benefits as follows:

[T]he level of incapacity necessary to sustain a claim for disability benefits is the same for purposes of both provisions. The distinction in terms of eligibility between the two ... lies with the source of the injury which results in disability: if the injury arose out of or in the course of the actual performance of duty, then the claimant who is totally incapacitated is entitled to special disability benefits; if the injury was caused by any other means, then the claimant who is totally incapacitated is entitled to ordinary disability benefits.

I. Whether the circuit court erred in affirming the hearing examiner's ruling that the term "injury" in § 34(e) of the Retirement Act, includes Mitchell's cancer;

II. Whether the circuit court erred in affirming the hearing examiner's ruling that Mitchell's request for a special disability pension was not barred by the five year statute of limitations in § 34(e) of the Retirement Act.

For the reasons that follow, we shall hold that cancer, caused by occupational hazards, can constitute an "injury" under § 34(e) of the Retirement Act. Unfortunately, that does not end the matter. Because the hearing examiner declined to determine whether Mitchell's pancreatic cancer was a new cancer or the result of the spread of his much earlier esophageal cancer, we shall not at this time consider whether appellant's claim is barred by the applicable five-year statute of limitations. Instead, we shall vacate the judgment below and remand this case so that a determination can be made as to whether the pancreatic cancer was a primary or metastatic cancer and whether, based on that determination, appellant's claim is barred by the statute of limitations.

### Facts

Mitchell was a firefighter for the Baltimore City Fire Department from December 29, 1986, to April of 1998. During the last eight years of his service with that department, Mitchell's principal responsibility was to create an opening in burning structures to allow gases, smoke, and toxins to escape so that other firefighters could enter with hose lines.

In May of 1993, Mitchell was having difficulty swallowing. That led to the discovery of a cancerous tumor on his esophagus. The tumor was surgically removed, and Mitchell returned to work, resuming his duties as a firefighter.

That surgery appeared to have rid Mitchell of the cancer. Annual CAT scans in 1994, 1995, and 1996 seemed to confirm that fact. In October of 1997, however, Mitchell began experiencing back pain, dysphasia, and weight loss. These symp-

toms prompted exploratory surgery in April 1998, revealing an unresectable tumor in Mitchell's pancreas.

Mitchell applied for special disability benefits on September 8, 1998, alleging that he was disabled by pancreatic cancer. A hearing was held on that application before a hearing examiner of the Fire and Police Employees Retirement System. Following that hearing, the examiner issued a written decision, stating that Mitchell "established by the preponderance of the evidence that he was eligible and should receive Special Disability Retirement." Appellant then filed a petition for judicial review in the Circuit Court for Baltimore City, alleging that the hearing examiner had failed to make findings of fact as required by law. The Circuit Court agreed and remanded the case for the examiner to make those findings. On remand, the hearing examiner made the necessary findings and found once again that Mitchell was entitled to receive special disability benefits.

## The Hearing Examiner's Decision

Because the parties agreed that Mitchell was totally disabled by his pancreatic cancer, only two issues were before the examiner: whether Mitchell's cancer was the result of an injury arising out of and in the performance of his job duties, and whether Mitchell filed his application for special disability benefits within five years of his injury, as required by the applicable statute of limitations.

As to whether Mitchell's pancreatic cancer constituted an injury under the Retirement Act, the hearing examiner simply wrote that "cancer of the esophagus and pancreas constitutes an injury." No further explanation was given. After summarizing the medical evidence presented, the hearing examiner found that the toxins to which Mitchell had been exposed as a fire fighter were the cause of his cancer. The examiner consequently concluded that Mitchell's cancer arose out of and in the course of the performance of his firefighting duties.

With respect to whether Mitchell's application for special disability benefits was time-barred, the hearing examiner found that the application was timely filed, stating:

There is much debate as to whether the subsequent cancer of the pancreas was a continuation of the cancer of the esophagus or a new cancer. In the opinion of this Hearing Examiner that debate is irrelevant. Prior to 1998 there was no injury to his pancreas. It was this injury to the pancreas that caused his disability. Therefore, the claimant did apply for Special Disability within the required five years of disability.

## Standard of Review

In reviewing an administrative decision, such as the one before us, our role "is precisely the same as that of the circuit court." *Dep't of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994). We review the decision of the administrative agency itself, *Ahalt v. Montgomery County,* 113 Md.App. 14, 20, 686 A.2d 683 (1996), and not the findings of fact and conclusions of law made by the circuit court. *Consumer Protection Division v. Luskin's, Inc.,* 120 Md.App. 1, 22, 706 A.2d 102 (1998), *rev'd in part on other grounds,* 353 Md. 335, 726 A.2d 702 (1999). We further note that under § 34(1) of the Retirement Act, a "final determination of the hearing examiner" is "presumptively correct" and it may not be disturbed on appeal unless it is "arbitrary, illegal, capricious or discriminatory." In other words, our role "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994). "In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' " *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999).

Unlike a factual conclusion, however, a legal conclusion is not entitled to deference. *Bozeman v. Disability Review Board of the Prince George's County Police Pension Plan,* 126 Md.App. 1, 5, 727 A.2d 384 (1999). "When the

question before the agency involves interpretation of an ordinance or statute, our review is more expansive. We are not bound by the agency's interpretation." *Id.*

## Discussion

### I.

Appellant contends that the hearing examiner erred in holding that Mitchell's cancer constitutes an "injury" under § 34(e) of the Retirement Act. It claims that Mitchell's cancer was not an injury under that provision, because it was an occupational disease and because it did not occur "at a discrete point in time."

We begin our analysis with a review of the rules of statutory construction. "The cardinal rule of statutory interpretation is the ascertainment of legislative intent." *Langston v. Langston,* 366 Md. 490, 507, 784 A.2d 1086 (2001). "[I]n interpreting and determining legislative intent, we must look to the plain language of the enactment, while keeping in mind its overall purpose and aim." *Waters v. Pleasant Manor Nursing Home,* 361 Md. 82, 103–04, 760 A.2d 663 (2000). " 'The search for legislative intent begins, and ordinarily ends, with the words of the statute under review.' " *Martin v. Beverage Capital Corp.,* 353 Md. 388, 399, 726 A.2d 728 (1999). Where the words of the statute are clear and unambiguous, there generally exists no need to look beyond those words to determine the legislative intent. *Id.* But where the statutory language is ambiguous, we will look to other sources, such as relevant case law and legislative history, to aid us in determining the legislature's intent. *Marsheck v. Board of Trustees of Fire & Police Employees' Retirement System of City of Baltimore,* 358 Md. 393, 403, 749 A.2d 774 (2000).

We now turn to the statutory provision at issue here: Section 34(e) of the Retirement Act. That statutory provision specifies when a city employee is eligible for special disability benefits. It states:

Any member who has been determined by the hearing examiner to be totally and permanently incapacitated for

the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without willful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement. For any employee who became a member on or after July 1, 1979, any claim for special disability benefits must be filed within 5 years of the date of the member's injury.

Although the term "injury" is used in that and other sections of the Retirement Act, it is never defined. We therefore turn to lay, legal, and medical lexicons for guidance. Webster's Third New International Dictionary of the English Language (1976) defines "injury" as:

> **1a:** an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm: WRONG ... **2:** hurt, damage, or loss sustained.... **Syn.** INJURY, HURT, DAMAGE, HARM, and MISCHIEF mean in common the act or result of inflicting on a person or thing something that causes loss, pain, distress, or impairment. INJURY is the most comprehensive, applying to an act or result involving an impairment or destruction of right, health, freedom, soundness, or loss of something of value....

*Dorland's Illustrated Medical Dictionary* (28th ed.1995) defines "injury" as "harm or hurt; a wound or maim. Usually applied to damage inflicted to the body by an external force." And Black's Law Dictionary (7th ed.1999) defines "injury" as "Harm or damage."

The common thread running through these definitions is that "injury" can be broadly defined to encompass many different types of harm. None of them, we note, limits that term to an occurrence that happens "at a discrete point in time." That observation, of course, is hardly dispositive of this issue. But it does suggest the potential breadth of that term, a fact conceded by counsel for appellant before this

Court. At the argument of this case, counsel agreed that a disease in its "broadest sense" could be an injury.

We further note that the statute before us is a remedial piece of legislation. It is therefore to be interpreted liberally in favor of the injured party to achieve the remedial purposes of the act. *Marsheck,* 358 Md. at 403, 749 A.2d 774. In other words, all things being equal, a broad interpretation of § 34(e) is favored over a narrow one.

Apart from this broad principle of statutory construction, however, Maryland law offers little guidance on this issue. What caselaw that does exist on this subject is of questionable relevance. *Board of the Trustees v. Powell,* 78 Md.App. 563, 554 A.2d 440 (1989). Consequently, we turn to other jurisdictions for assistance. And in so doing, we note that other state courts, in interpreting similar pension statutes, have declined to so narrowly define an "injury" that it would exclude an illness. *See Creighan v. Firemen's Relief and Pension Fund Bd.,* 155 A.2d 844, 397 Pa. 419 (1959) (holding that a fireman's "tuberculosis of the respiratory system" was an injury where the statutory right to a pension was contingent upon the fireman being "injured in the line of duty and disabled through such injury"); *State ex rel. McManus v. Bd. of Trs. of Policemen's Pension Fund,* 119 N.W. 806, 138 Wis. 133 (1909) (holding that a police officer's pneumonia was an injury where the statutory right to retire was dependent on the condition that the policeman, "while engaged in the performance of his active duty," "be injured" and found to be "permanently disabled").

Appellant insists, however, that Mitchell's cancer was not an "injury" under § 34(e), but an "occupational disease." In support of that claim, appellant cites *Foble v. Knefely,* 176 Md. 474, 6 A.2d 48 (1939), a worker's compensation case. In *Foble,* the issue before the Court of Appeals was whether the injuries an employee sustained to her knee over a lengthy period of time, while operating a machine at her place of employment, constituted an "accidental injury" or, as her employer contended, an "occupational disease" under the Maryland Worker's

Compensation Act ("MWCA").[3]   In the course of resolving that issue, the Court of Appeals defined "occupational disease" as an "ailment, disorder, or illness which is the expectable result of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in its approach." [4]   *Foble,* 176 Md. at 486, 6 A.2d 48.   In contrast, an "injury," it stated, had "none of the characteristics of an occupational disease," but was "associated in varying degrees with the elements of force, violence, and surprise . . ." *Id.* Consequently, Mitchell's pancreatic cancer, appellant argues, was an "occupational disease" and not an "injury."

*Foble,* however, has little bearing on the instant case.   Unlike the MWCA, the Retirement Act does not divide disabilities into two categories: "accidental injuries" and "occupational diseases."   Md.Code Ann. (1999 Repl.Vol. & 2000 Cum. Supp.), §§ 9–501 and 9–502 of the Lab. & Empl. Article; *see also Means v. Baltimore Co.,* 344 Md. 661, 664, 689 A.2d 1238 (1997) ("In Maryland, workers' compensation encompasses two categories of compensable events:   accidental personal injury and occupational diseases.").   In fact, the Retirement Act does not even contain an occupational disease category.   That Mitchell's cancer may constitute an "occupational disease" under the MWCA is therefore not relevant.   Moreover, we note that "while analogies to workmen's compensation cases

---

**3.**   Md.Code Ann. (1999 Repl.Vol. & 2000 Cum.Supp.), Title 9 of the Lab. & Empl. Article.

**4.**   When originally enacted in 1914, the Workmen's Compensation Law provided compensation for an employee who suffered from an accidental injury arising out of and in the course of his employment. Md.Code, Article 101, Section 14 (1914).   In 1939, the Maryland Assembly enacted House Bill 484, amending the Workmen's Compensation Law to provide compensation for an employee who suffered an injury from an occupational disease.   Laws of Maryland, Chapter 465, section 1 (1939); *see also Belschner v. Anchor Post Products, Inc.,* 227 Md. 89, 92, 175 A.2d 419 (1961) (discussing the history compensation for occupational diseases under the Workmen's Compensation Law).   This amendment took effect on June 1, 1939, just over a month after the Court of Appeals decided *Foble.*   Laws of Maryland, Chapter 465, section 2 (1939).

are frequently helpful in pension cases, any analogy must be drawn keeping clearly in mind the difference between the [language of the MWCA], and the language in the [Retirement Act]." *Board of Trustees v. Grandinetti,* 269 Md. 733, 738, 309 A.2d 764 (1973) (citations omitted).

Appellant next argues that because Mitchell's cancer did not occur "at a discrete point in time," it was not, under *Marsheck,* an injury. In that case, Marsheck, a Baltimore City police officer, sustained a work-related back injury. *Marsheck,* 358 Md. at 398, 749 A.2d 774. Despite that injury and while undergoing "several surgeries on her back, multiple epidural injections and steroid blocks," she continued to perform her duties with the police department *Id.* at 399, 749 A.2d 774. Unfortunately, Marsheck's back problems worsened. *Id.* More than five years later, her physician found that she was "one hundred percent disabled from performing her duties with the police department." *Id.*

Marsheck then filed an application with the Fire and Police Employees' Retirement System of the City of Baltimore ("the system"), seeking the same special disability benefits pursuant to § 34(e) that appellee now seeks. *Id.* At the administrative hearing that followed, Marsheck's application for special disability benefits was denied because it was not filed within five years of her injury as required by § 34(e). *Id.* at 399–400, 749 A.2d 774.

Before the Court of Appeals, Marsheck argued that the term "injury," in the statute of limitations provision of the § 34(e), means "the date a police officer becomes permanently disabled and incapacitated from being able to perform police duties and, thus, forced into retirement." *Id.* at 400, 749 A.2d 774. Thus, Marsheck sought to extend the date the statute of limitations began to run to "the earliest date her health deteriorated to the point that she permanently became unable to perform any police duties." *Id.*

Its "task," the *Marsheck* Court wrote, was to "ascertain[ ] . . . whether the legislative body intended the term 'injury' in § 34(e) to mean the point at which a police officer becomes

permanently disabled." *Id.* at 402, 749 A.2d 774. In other words, the issue before it was when does an "injury" occur for the purposes of the statute of limitations, not what is an "injury," which is the issue before us. The *Marsheck* Court ultimately held that the term "injury," in the statute of limitations provision of § 34(e), does not mean, as Marsheck argued, that the date of disablement was the date of the injury. *Id.* at 409, 749 A.2d 774. It reasoned that "injury" and "disablement" were terms in the Retirement Act that clearly referred to different things. *Id.* at 408, 749 A.2d 774.

Appellant contends, however, that *Marsheck* also stands for the proposition that a harm is not an "injury" under the Retirement Act unless it occurs "at a discrete point in time." *Id.* at 410, 749 A.2d 774. We disagree. That language—"a discrete point in time"—must be read in conjunction with the statement that precedes it. What the Court actually stated was: "Indeed, an applicant for special disability benefits must show, by a preponderance of the evidence, that the injury arose from his or her police duties. Ordinarily such a burden requires proof of a work-related injury at a discrete point in time." *Id.* (citations omitted).

Given that context, it is clear that the Court was not addressing the question of what is an "injury" under the Retirement Act but only what evidence is ordinarily required to show that the injury arose from the claimant's duties. In other words, the Court was simply stating that to prove that an injury arose out of a claimant's employment, it usually requires that the claimant establish when the injury occurred.

Finally, such a narrow construction of "injury" serves no identifiable public policy. An interpretation of the Retirement Act that would give a firefighter who is injured by a falling beam special benefits, but deny them to a firefighter, who develops cancer as a result of having inhaled carcinogenic fumes in the course of carrying out his duties, seems entirely arbitrary. That the date on which the beam fell can be precisely determined but the date on which the first cancer cell developed in Mitchell cannot lends at most a patina of

rationality to an unreasonable distinction. To define one harm as an injury and the other as not, in the absence of any supporting authority, strikes us as arbitrary and capricious. And because we are constrained to adopt "that construction [of a statute] which avoids an illogical or unreasonable result," *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987), we must reject the narrow construction of "injury" urged by appellant and conclude that the Mitchell's pancreatic cancer was an "injury."

## II.

Appellant contends that the circuit court erred in affirming the hearing examiner's finding that Mitchell timely filed his application for special disability benefits within five years of the date of his injury. Specifically, the hearing examiner found:

> Since the Claimant joined the Retirement System after July 1, 1979 there is the issue as to whether he applied for disability within five years of the date of his injury. The Claimant was diagnosed with cancer of the esophagus in 1993. He was operated on and returned to performing the duties of a firefighter. In 1998 he was diagnosed as having cancer of the pancreas. It was a result of the second diagnosis that the Claimant could no longer perform the duties of a firefighter. **There is much debate as to whether the subsequent cancer of the pancreas was a continuation of the cancer of the esophagus or a new cancer. In the opinion of this Hearing Examiner that debate is irrelevant. Prior to 1998 there was no injury to his pancreas. It was this injury to the pancreas that caused his disability. Therefore, the claimant did apply for Special Disability within the required five years of disability.**

(Emphasis added).

Contrary to the finding of the hearing examiner, however, appellant argues that "[t]he medical records that address the issue of when the [pancreatic] cancer started are undisputed."

In support of that claim, appellant cites two medical reports: one by Andrew S. Kennedy, M.D., an Assistant Professor in the Department of Radiation Oncology of the University of Maryland School of Medicine, who performed radiation therapy on Mitchell's pancreatic cancer, and the other by Anthony Imbembo, M.D., who removed Mitchell's esophageal tumor and later performed a biopsy on his pancreatic tumor.

Dr. Kennedy's report states that Mitchell's "distal esophageal adenocarcinoma [was] diagnosed in 1993." It concludes that Mitchell's pancreatic cancer "is a continuation of his previously diagnosed esophageal cancer, although well-differentiated and slow-growing, it is nonetheless, not a new cancer."

The second report that appellant cites is an April 3, 1998 letter from Dr. Imbembo. In that letter, Dr. Imbembo wrote that, "[d]espite the five year interval, metastatic carcinoma remains the most likely diagnosis." "Thus," appellant argues, "the hearing examiner arbitrarily ruled that the cause of the cancerous tumor in the pancreas had no legal relevance to the five year limitations provision and instead focused solely on whether a new body part had been infected by the cancer within five years of the application for disability pension."

In conflict with the reports cited by appellant, however, is the report of Marvin J. Feldman, M.D., and the finding of Austin Doyle, M.D., of the University of Maryland Cancer Center. Dr. Feldman, a board certified oncologist with Mercy Medical Center, examined Mitchell on October 28, 1998, at the Board's request, and prepared a report based on that examination and a review of Mitchell's medical records and pertinent medical literature. In that report, he states that, in 1998, Mitchell was discovered to have a "cystadenocarcinoma"[5] of the pancreas, and that "the etiology" of this type of cancer "is completely unknown." He also cites the opinion of Dr. Doyle,

---

5. "Cystadenocarcinoma" is defined as "[a] malignant tumor derived from glandular tissue, in which secretions are retained and accumulate in cysts." The American Heritage Stedman's Medical Dictionary (2001).

who had previously seen Mitchell. According to Dr. Feldman, Doyle "felt [the tumor] was likely a pancreatic primary."

Consequently, we agree with the hearing examiner that there was "much debate as to whether the subsequent cancer of the pancreas was a continuation of the cancer of the esophagus or a new cancer." We do not agree, however, that the debate was "irrelevant." Indeed, without a resolution of this issue, we cannot reach the next issue: whether Mitchell's claim is time-barred. We therefore shall remand this matter for the issue of whether Mitchell's pancreatic cancer was primary or metastatic to be considered and decided below.

If, upon remand, it is determined that the pancreatic cancer was primary and not the result of the spread of Mitchell's esophageal cancer, then, in our view, Mitchell's claim for special disability pension benefits is not barred by the statute of limitations. If, on the other hand, it is found that the pancreatic cancer was metastatic, having originated in Mitchell's esophagus, then, we believe that Mitchell's claim for those benefits is time barred.

In reaching that conclusion, we first note that § 34(e)'s statute of limitations runs from the date of injury and not the date of disablement. *Marsheck*, 358 Md. at 409, 413–14, 749 A.2d 774. The date of Mitchell's injury was the date on which he developed esophageal cancer and the date on which he developed pancreatic cancer, if that cancer was primary and not simply part of the natural progression of the esophageal cancer. In other words, each advance of that disease does not constitute an entirely new disease or injury, as being metastatic is a feature of cancer. Indeed, cancer is defined as "[a]ny of various malignant neoplasms characterized by the proliferation of anaplastic cells that tend to invade surrounding tissue and metastasize to new body sites." The American Heritage Stedman's Medical Dictionary (2001).

Moreover, to hold otherwise would in effect indefinitely extend the statute of limitations at issue here for countless progressive diseases and degenerative conditions, as it would run anew each time another organ or part of the body was

invaded or affected during the course of an illness. Under those circumstances, the predictability that such statutes are intended to provide would come to an end. As the Court of Appeals explained in *Marsheck*, statutes of limitations serve expediency, not principle. They are not "illogical or irrational" just because "they [may] destroy a potential claim for disability before the disability arises." *Id.* at 413, 749 A.2d 774. They are born of " 'necessity and convenience.' " *Id.* at 405, 749 A.2d 774. They create a modest amount of predictability in a financial world teeming with uncertainty and risk. Without their clarity, potential defendants would be unable to either control or even anticipate the risks they face, leaving them, as the Court warned, "with uncertainty that may affect future financial viability." *Id.*

Furthermore, if it is determined that Mitchell's pancreatic cancer was the result of the metastasis of his esophageal tumor, it is safe to assume that the metastasis occurred before the tumor's surgical removal; otherwise, the tumor's removal would have cured the disease. Consequently, it is possible that the first cancer cells had already invaded Mitchell's pancreas by the time the esophageal tumor was removed. That possibility illustrates the folly of attempting to treat each advance of the same cancer as a new injury for limitations purposes. Any effort to draw such lines with respect to the spread of cancer or other progressive diseases or conditions is bound to produce results that are neither scientifically sound nor jurisprudentially tenable.

Finally, we are mindful of the unfortunate paradox that our ruling perpetuates today: Mitchell could not have filed his application for special disability benefits until he was disabled and, by that time, the statute of limitations for such claims had run. That predicament is no doubt the lot of every claimant who has a work-related, progressively debilitating condition or disease that does not render him or her disabled within the statute of limitations for special pension benefits. Indeed, it was precisely Marsheck's predicament. The only difference is that Marsheck knew of her condition, and appellant did not. But that does not materially distinguish the two cases. Be-

cause whether or not Mitchell knew that his cancer had spread, he would not have been able to file his claim, like Marsheck, until he was totally disabled.

This of course seems unfair. But, under current law, we can do no more than point out the inequity of granting special disability benefits to those whose disabilities follow on the heels of job-related injuries, while denying them to those whose disabilities develop over time. The decision to extend the coverage of § 34(e) of the Retirement Act is a legislative one, and therefore must be left to the appropriate legislative body to decide. On this point, the words of the *Marsheck* Court bear repeating:

> The statute of limitations ... which excludes [Marsheck] from receiving her special disability benefits, was enacted by the City Council, not by this Court. We will not modify the disability system *ad hoc* to suit our sensibilities and pivot around the legislature's true intentions.

*Id.* at 414, 749 A.2d 774.

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH IN-STRUCTION TO REMAND TO THE BOARD OF TRUST-EES FOR THE FIRE AND POLICE EMPLOYEES RE-TIREMENT SYSTEM OF THE CITY OF BALTIMORE FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**

Dissenting Opinion by DEBORAH S. EYLER, J.

Dissenting opinion by DEBORAH S. EYLER, J.

I agree with the majority's conclusion in Part I that the word "injury" in section 34(e) of the Retirement Act embraces not only accidental injuries but also occupational diseases, such as the pancreatic cancer that James C. Mitchell contract-ed from exposure to toxins in the course of his duties as a

Baltimore City firefighter. Because I disagree with the majority's analysis in Part II, I respectfully dissent.

In Part II, the majority concludes that if Mitchell's pancreatic cancer was a metastasis of his primary esophageal cancer, the date of his "injury" was May 1993, when he first became aware that he had contracted primary esophageal cancer; and because Mitchell's September 1998 disability application was not filed within five years of that May 1993 date, it was untimely under section 34(e). The majority also concludes that if Mitchell's pancreatic cancer was a primary cancer, then the date of his injury was well within five years of his developing symptoms in the spring of 1998, and his September 1998 special disability application was timely filed. The majority therefore is remanding the case to the Hearing Examiner for him to decide whether Mitchell's pancreatic cancer was metastatic (as the Board's expert opined) or primary (as Mitchell's experts opined).

On the limitations issue, the Hearing Examiner found::

[Mitchell] was diagnosed with cancer of the esophagus in 1993. He was operated on and returned to performing the duties of firefighter. In 1998 he was diagnosed as having cancer of the pancreas. It was a result of the second diagnosis that [Mitchell] could no longer perform the duties of a firefighter. There is much debate as to whether the subsequent cancer of the pancreas was a continuation of the cancer of the esophagus or a new cancer. In the opinion of this Hearing Examiner that debate is irrelevant. Prior to 1998, there was no injury to the pancreas. It was this injury to the pancreas that caused [Mitchell's] disability. Therefore, [Mitchell] did apply for Special Disability within the required five years of disability.

As this finding makes plain, the Hearing Examiner concluded that it was not necessary for him to decide whether Mitchell's pancreatic cancer was primary or metastatic because if it was primary, the date of the injury was April 1998, when the pancreatic cancer was diagnosed, and the special disability claim was filed within five years of that date; and if

it was metastatic, the claim still was filed within five years of the date of injury, because the pancreatic cancer, being in an altogether different organ in which Mitchell had never before had cancer, was a separate injury from Mitchell's primary esophageal cancer. I would affirm that decision.

Most cancers and many other diseases contracted in the workplace are latent, *i.e.,* they develop insidiously, and for some period of time after exposure to the disease-causing agent the injured person is not symptomatic and does not know that he has contracted the disease. The majority seems to acknowledge, at least implicitly, that for purposes of section 34(e) claims for special disability benefits, the date of a latent occupational disease "injury" is not the date when exposure to the disease-causing agent takes place but when the injured person knows (or reasonably should know) that he has contracted the disease. I say implicitly because while not expressly adopting the standard, the majority's conclusion that the date of Mitchell's primary esophageal cancer injury was May 1993 assumes that standard. May 1993 was when Mitchell first experienced symptoms of primary esophageal cancer and the cancer was diagnosed; the exposure to toxins that caused the disease and the first growth of cancer cells in Mitchell's body must have happened before then, perhaps long before.

I agree that when the injury in question is a latent occupational disease, the "date of injury" under section 34(e), and thus the date the five-year limitations period for filing a special disability claim starts to run, is the date the injured person knew or should have known that he has contracted the disease. Any other interpretation of "date of injury" in the context of latent occupational diseases would foreclose injured workers who are unaware and cannot be aware that they have been injured from seeking special disability benefits to which they are entitled. That would run contrary to the remedial purpose of the Retirement Act. To avoid unfair situations of that sort, the Court of Appeals has applied the "discovery rule" when interpreting the three year statute of limitations for tort claims in Maryland. *Hecht v. Resolution Trust Corp.,*

333 Md. 324, 635 A.2d 394 (1994); *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981). The "discovery rule" is a judicial interpretation that recognizes that the General Assembly "never intended to close our courts to plaintiffs inculpably unaware of their injuries." *Murphy v. Merzbacher,* 346 Md. 525, 532, 697 A.2d 861 (1997). Likewise, it is unreasonable to conclude that the Baltimore City Council intended to foreclose claimants who are "inculpably unaware of their injuries" from seeking special disability benefits. Accordingly, the "discovery rule" applies in determining the date of injury in a claim for special disability retirement benefits when the injury is a latent occupational disease.

Under the majority's reasoning, if Mitchell's pancreatic cancer was not a primary disease, but was a metastasis from the primary esophageal cancer diagnosed in May 1993, the date of injury for the metastatic pancreatic cancer also was May 1993, even though Mitchell did not experience any symptoms of pancreatic cancer until April 1998, periodic testing performed between October 1993 and April 1998 did not show any cancer in his body, and the spread of cancer cells from the primary esophageal site to the pancreas happened at a cellular level that neither Mitchell nor his treating doctors knew or could have known about. The majority reasons that this conclusion is compelled by the Court of Appeals's decision in *Marsheck v. Board of Trustees,* 358 Md. 393, 749 A.2d 774 (2000). I disagree.

In *Marsheck,* the claimant, an employee of the Baltimore City Police Department, sustained an accidental injury to her back in the course of her employment, on February 13, 1992. She underwent treatment but continued to work. In September 1996, her back problems worsened, to the point that she became unable to work. She endured several surgeries and other less invasive forms of treatment. On February 6, 1997, her doctor opined that she was one hundred percent disabled from performing her duties with the police department.

The claimant acknowledged that the February 13, 1992 accidental injury to her back was her only injury; she did not

sustain another injury thereafter. On February 12, 1997, exactly five years after her February 13, 1997 injury, the claimant mailed an application for special disability benefits to the Board. The application did not arrive until February 18, 1997, and was rejected because it was not in proper form. A properly prepared application was not received until February 25, 1997, five years and twelve days after the claimant's date of injury. A hearing officer concluded that the claimant's application was not filed within five years of her date of injury, as required by section 34(e). That finding was affirmed by the Circuit Court for Baltimore City, by this Court, and ultimately by the Court of Appeals.

Before the Court of Appeals, the claimant argued that her date of injury, under section 34(e), was the date she became permanently disabled/totally incapacitated and unable to work. The Board argued, to the contrary, that the date of injury was the date of the accident that eventually caused the claimant to become permanently disabled/totally incapacitated.

The Court of Appeals agreed with the Board, concluding that the claimant's date of injury was February 13, 1992, the date she hurt her back, not the date her symptoms from the back injury progressed to the point that she no longer could work. The Court reasoned from the language of section 34(e) and section 33(1), which describes the role of the hearing examiner in such cases, that the Baltimore City Council "made a distinction in meaning between 'injury' and 'disability' or 'incapacity.'" 358 Md. at 408, 749 A.2d 774. The Court explained,

> [T]he term "disability" relates to the accrual of the right to receive compensation, meaning the date that [the claimant] could apply for special disability benefits, while the term "injury" begins the point in time when the statute of limitations begins to run, thus starting the five year period within which the injured employee's claim must be filed. We hold, therefore, that "injury" and "disability" (or incapacitation) for the purposes of § 33(1) and § 34(e) are separate in

meaning "both practically and in the contemplation of the law."

*Id.* at 409, 749 A.2d 774 (citations omitted).

The Court in *Marsheck* went on to explain that the genesis of the distinction between "injury" and "disability" in the special disability benefits law is that workers are entitled to special disability benefits only for injuries sustained in the course of their work. Thus, unlike in the case of ordinary disability benefits, the worker must show a causal connection between the injury and his work. The Court observed:

> Ordinarily such a burden requires proof of a work-related injury at a discrete point in time.... By setting a five year limitation within which an applicant must file a special disability claim for a work-related injury, certain practical and administrative difficulties that may arise after an extended lapse of time between injury and the onset of disability are eliminated. Without a time limitation, a hearing examiner might be confronted with difficult determinations of the relationship between an ancient injury and a present permanent disability.

358 Md. at 410, 749 A.2d 774.

*Marsheck* is distinguishable from the case at bar. First, the appellee is not arguing that the five-year limitations period started to run on the date Mitchell became disabled. She is not conflating injury and disability, as the claimant in *Marsheck* was doing. Rather, she is arguing that Mitchell's pancreatic cancer was a discrete injury, and the date of the injury was the date it was diagnosed. The injury would have occurred on that date whether or not Mitchell was disabled from it.

Second, and more important, the claimant in *Marsheck* did not suffer a latent injury. She sustained an accidental injury that was known to have occurred at a discrete point in time, even though her total disability did not occur until later. The Court in *Marsheck* emphasized that the claimant's date of injury was known, undisputed, and discrete, and that that date triggered the bright-line five-year limitations period in section

34(e). The Court recognized, however, that in some situations, such as latent disease cases, that may not be the case. It stated: "We expressly decline [the claimant's] invitation to apply the "discovery rule" to this case. *Her date of original injury is undisputedly 13 February 1992. We need not address, nor compare, her situation with that of a latent injury.*" 358 Md. at 414 n. 9, 749 A.2d 774 (emphasis added).

The claimant in *Marsheck* suffered a discrete injury on a particular date that was not latent and that evolved, and was known by her to have evolved, into a serious and eventually disabling condition. There was never any question of whether she knew or could have known that her more severe symptoms were a progression of her original accidental injury. Clearly, she did. As the Court noted, compensation for this kind of injury, linked to a particular date in time, lends itself to bright-line statutes of limitations for filing claims, whether in tort or for statutorily established disability benefits. 358 Md. at 413, 749 A.2d 774.

In the case at bar, by contrast, if Mitchell's pancreatic cancer was metastatic, *i.e.*, was the spread to a new location of the primary esophageal cancer, he suffered two latent diseases, one primary and one metastatic, neither of which occurred at a discrete point in time. First, at some point in time, Mitchell contracted primary esophageal cancer, an on-the-job injury that was unknown and unknowable until May 1993, when he first developed symptoms. He was treated and then went through a period in which he was well. All his symptoms of cancer were gone, and all the tests performed to detect any cancer in his body were negative. Then, almost five years later, in April 1998, he developed new symptoms and was diagnosed with cancer in a new location; until then, the cancer was unknown and not capable of being known to him or his doctors.

Even if Mitchell's pancreatic cancer was metastatic, there was no evidence that, after Mitchell appeared cured of his esophageal cancer, either he or his doctors expected he would develop metastatic disease. Indeed, the evidence was to the

contrary. Dr. Imbembo, who treated Mitchell in 1993 and 1998, at first thought the pancreatic cancer was unrelated to the esophageal cancer. Unlike in *Marsheck*, Mitchell was not a spectator to his own evolving and worsening condition. Rather, he once again experienced a latent disease, but in another part of his body. He was "inculpably unaware" of that disease, and neither he nor his doctors could have been aware of it, even though it was a continuation of his original cancer. In my view, this evidence supported the Hearing Examiner's finding that Mitchell's pancreatic cancer, even if metastatic, was a second, latent injury. The date of that injury was the date it became known (and first was capable of becoming known) to Mitchell—April 1998. Mitchell filed his application for special disability benefits within five years of that date.

For these reasons, I would affirm the decision of the Hearing Examiner on both issues.