883 A.2d 173

Zbigniew FEDOROWICZ

v.

STATE RETIREMENT AND PENSION
SYSTEM OF MARYLAND.

No. 0481, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 15, 2005.

Marvin Mandel (Terrence C. Liff on the brief), Annapolis, for Appellant.

Rachel S. Cohen (J. Joseph Curran, Jr., Atty. General on the brief), Baltimore, for Appellee.

Panel: JAMES R. EYLER, KENNEY, ADKINS, JJ.

ADKINS, Judge.

In this appeal from the denial of accidental disability retirement benefits, we interpret the following limitations period established by Md.Code (1993, 2004 Repl.Vol.), section 29–104(d)(2) of the State Personnel and Pensions Article (SPP):

The Board of Trustees [for the State Retirement and Pension System of Maryland] may not accept an application for accidental disability filed by a member or former member more than 5 years after the date of the claimed accident.

Guided by precedent construing an analogous statute governing similar claims by Baltimore City employees, we shall

hold that the five year limitations period applies to state employees whose accidental disability retirement applications were initiated or submitted by their employer agency. In addition, we shall hold that the five year deadline may not be extended based upon when the disability was discovered.

## FACTS AND LEGAL PROCEEDINGS

As a civilian employee of the Maryland State Police (MSP), appellant Zbigniew Fedorowicz was a "member" of the Employee's Pension System (EPS), and therefore eligible for retirement benefits under the State Retirement and Pension System of Maryland (SRPS). Fedorowicz, an automotive specialist, suffered a fractured right shoulder on July 19, 1996, in an accident that occurred while he was replacing a tire at the MSP Garage Barrack. Following surgery on July 26, he returned first to light duty, then to regular duty, by October 30.

Pain continued in his injured shoulder throughout the time he was working full-time. His arm was re-fractured, allegedly "as a result of the July 1996 accident," leading to additional surgery in May 2000. Fedorowicz returned to light duty on September 11, 2000. He performed eight months of temporary light duty assignments. But Fedorowicz could no longer raise his right arm above his shoulder or "push, twist, use force to loosen or tighten bolts, nuts, or lift heavy objects" with that arm. He acknowledges that these tasks are essential to performing the full duties of an automotive specialist. The MSP, however, did not have a permanent light duty position available for Fedorowicz.

In April 2001, MSP Medical Director Dr. Phillip Phillips summoned Fedorowicz to a meeting. According to Fedorowicz,[1] Dr. Phillips advised that he "would have no problem" recommending him for an accidental disability retirement. To process the claim, Phillips told Fedorowicz, he would need a

---

1. Fedorowicz's account of relevant events appears in his affidavit and his Statement of Disability.

functional capabilities exam, which could be performed by physicians designated by the MSP. In Fedorowicz's presence, Phillips instructed MSP's Disability Retirement Coordinator, Michelle Miller, "to prepare the necessary paperwork in conjunction with the request for accidental disability retirement." Fedorowicz "understood this conversation between Dr. Phillips and Ms. Miller to mean that Ms. Miller's office would be responsible for the filing of any disability claim on my behalf."

On May 21 and June 26, 2001, Fedorowicz underwent two medical exams to which he had been referred by Dr. Phillips. The exams were arranged and paid for by the MSP. "On approximately July 3, 2001," Miller telephoned Fedorowicz to tell him "she had not yet received the results from the doctors." She asked Fedorowicz to call those doctors to "request that their offices forward the evaluations to the MSP." Fedorowicz did so, then informed Miller that both doctors said that their reports were on their way. When Fedorowicz asked what he should do next, Miller told him to "just wait."

The exam results indicated that Fedorowicz could not perform the duties necessary to return to full duty as an automotive specialist. Fedorowicz was called in October to meet with managers from the MSP's human resources and motor vehicle departments. At an October 17, 2001 "Options" meeting, MSP officials told Fedorowicz that he could no longer remain on light duty status. Fedorowicz was given three alternatives: (1) resign, (2) work for another six months while he applied for disability retirement, or (3) be terminated. Fedorowicz chose the second option.

Fedorowicz executed his Statement of Disability on October 15, 2001. At the bottom of page one, the forms necessary to complete an accidental disability retirement are listed, preceded by the following notice:

> IMPORTANT: The Retirement Agency's counselors and your Agency's retirement coordinators will help you to complete and forward the following forms, but, ultimately,

it is your responsibility to insure that all of the following forms are completed and submitted with this form.

Fedorowicz returned the form to Miller, who signed it and dated it October 22, 2001. The Board received Fedorowicz's application on October 29, 2001, five years and three months after the accident in which he was injured. Fedorowicz continued to work until July 2002.

By letter dated February 6, 2002, the Board of Trustees of the State Retirement and Pension System (SRPS and the Board), appellee, advised Fedorowicz that it could not consider him for accidental disability benefits because his application was filed after the five year deadline established in SPP section 29–104(d)(2). Instead, the Board considered the claim as one for ordinary disability retirement. Fedorowicz was ultimately granted an ordinary disability retirement, which does not require a showing that the disability was caused by a work-related accident, but it provides lower benefits.

Fedorowicz obtained an administrative review of the Board's refusal to consider his application. The ALJ granted summary decision on the basis of the five year limitations period in SPP section 29–104(d)(2). The Circuit Court for Montgomery County affirmed. Fedorowicz noted this timely appeal, raising several issues that we rephrase as two:

I.    Is the five year limitations period in SPP section 29–104(d)(2) inapplicable when the accidental disability retirement claim is initiated and/or submitted by the employer agency rather than by the employee?

II.   Is the five year limitations period in SPP section 29–104(d)(2) tolled until the employee discovers his disability?

We answer "no" to both questions and affirm the judgment.

## DISCUSSION

### Review Of The Board's Decision

We must review the Board's decision not to consider Fedorowicz's accidental disability retirement application to deter-

mine if it is premised upon an error of law. *See Marzullo v. Kahl,* 366 Md. 158, 171, 783 A.2d 169 (2001). Here, the dispositive issue is whether the Board properly interpreted and applied SPP section 29–104(d)(2).

■ We give significant weight and deference to the Board's interpretation of statutes that it regularly applies. *See Md. Transp. Auth. v. King,* 369 Md. 274, 288, 799 A.2d 1246 (2002). We also presume that the Board's decision is prima facie correct. *See Marsheck v. Bd. of Trustees of the Fire & Police Employees' Retirement Sys. of Baltimore City,* 358 Md. 393, 402, 749 A.2d 774 (2000).

In construing a statute, we seek to determine and implement the General Assembly's intent. *See id.* We begin with the statutory language, reading it in light of the entire statutory scheme. *See id.* at 403, 749 A.2d 774. If the meaning of the words "is plain and definite, our inquiry as to the legislature's intent will end[.]" *Id.* (citation omitted).

### Accidental Disability Retirement

Title 29 of the State Personnel and Pensions Article governs disability benefits for members of the Employees' Retirement System covering state employees like Fedorowicz. The Board must

grant accidental disability retirement allowances to a member if:

(1) the member is totally and permanently incapacitated for duty as the natural and proximate result of an accident that occurred in the actual performance of duty at a definite time and place without willful negligence by the member; and

(2) the medical board certifies that:

(i) the member is mentally or physically incapacitated for the further performance of the normal duties of the member's position;

(ii) the incapacity is likely to be permanent; and

(iii) the member should be retired.

SPP § 29–109(b).

But "[b]efore the Board of Trustees grants a retirement allowance for a disability, an application must be completed and submitted to the Board of Trustees in accordance with §§ 29–103 and 29–104 of this subtitle." SPP § 29–102. "Subject to § 29–104 of this subtitle," applications "may be submitted (1) by a member; (2) by a former member; or (3) for a member," by "the member's department head" in the event that the "member is unable to apply[ .]" SPP § 29–103(a)–(b)(2).

Section 29–104, as set forth above, prohibits the Board from "accept[ing] an application for accidental disability filed by a member or former member more than 5 years after the date of the claimed accident." SPP § 29–104(d)(2). The current language of this subsection reflects the General Assembly's decision to repeal a previous exception that allowed the Board to accept an accidental disability retirement application if

the member ... prove[d] to the satisfaction of the medical board that failure to submit an application within the required 5 years was attributable solely to physical or mental conditions that resulted directly from the event or act of duty that caused the disability.

*See* 1997 Md. Laws, ch. 158 (amending former SPP § 29–104(d)(2)).

### *Marsheck* And *Mitchell*

Although there is no reported Maryland decision construing the limitations period in SPP section 29–104(d)(2), there are two cases that interpret and apply an analogous accidental disability retirement statute enacted by the Baltimore City Council for the benefit of City employees.[2] We find both cases instructive.

---

2. The Baltimore City Code uses the term "special disability" for disabilities stemming from work-related accidents. The Code provides that "any claim for special disability benefits must be filed within five (5)

In *Marsheck v. Bd. of Trustees of the Fire & Police Employees' Retirement Sys. of Baltimore City,* 358 Md. 393, 749 A.2d 774 (2000), the claimant police officer suffered an on-the-job back injury that required continuous medical treatment, including three surgeries, multiple epidurals, and physical therapy. Despite her efforts to continue employment, her condition steadily worsened until she could no longer continue to work on either full or light duty. She was not certified as permanently disabled until seven days before the five year limitations period expired. She mailed her application the day before, but it was not docketed as received until 13 days after the period expired.

The Court of Appeals held that five years from the date of injury meant five years from the date on which the claimant suffered an accidental back injury, even though it took some time for that injury to progressively worsen to the point that she was forced to seek special disability retirement (the City's analog to accidental disability retirement). *See id.* at 409, 749 A.2d 774. Thus, the five year limitations period barred her claim even if it was filed only one day late.

■ Acknowledging the harsh result, the Court of Appeals explained that the task of balancing countervailing State interests in recompense and repose belongs to the legislature rather than the judiciary. "Statutes of limitations re-enforce predictability, which is a cornerstone of such benefit statutes." *Id.* at 413, 749 A.2d 774. Although disability retirement statutes are remedial in nature, courts will " 'refuse to give statutes of limitations a strained construction to evade their effect.' " *Id.* at 404, 749 A.2d 774 (citation omitted). That is because

[s]tatutes of limitations are also remedial and grounded upon sound public policy. In addition to serving important societal benefits, such as judicial economy, they are de-

---

years of the date of the member's injury[,]" with the injury deemed to occur on the date of the accident that caused the claimant's disability. *See Marsheck v. Bd. of Trustees of Baltimore Fire & Police Employees' Retirement Sys.,* 358 Md. 393, 399 n. 1, 409, 749 A.2d 774 (2000).

signed to balance competing interests between potentially adverse parties.... The legislature, in drafting such legislation, implicitly recognizes that as time passes, difficult evidentiary issues arise, such as proof of the cause of injury, faded memories, and the availability of witnesses. Furthermore, without closure on the filing of such claims, potential defendants are often faced with uncertainty that may affect their future financial viability. By closing the window, the statute of limitations grants repose to potential defendants that would be disadvantaged unfairly by stale claims due to unreasonably long delay. The final result is that the "right to be free of stale claims in time comes to prevail over the right to prosecute them." ... [T]here is no magic to the window of time determined by the legislature. "It simply represents the legislature's judgment about the reasonable time needed to institute suit."

*Id.* at 404–05, 749 A.2d 774 (citations omitted).

For that reason, courts are not at liberty to "modify the disability system *ad hoc* to suit our sensibilities and pivot around the legislature's true intentions." *Id.* at 414, 749 A.2d 774. The Court affirmed the denial of special disability benefits, while "acknowledg[ing] that permanent disability may occur after the five year limitation period and that in some circumstances, such as [Marsheck's] situation, the strict application of the statute results in excluding her from a disability benefit that she might very well deserve in an unregulated universe." *Id.* at 413–14, 749 A.2d 774.

*Bd. of Trustees for the Fire and Police Employees' Retirement Sys. of Baltimore City v. Mitchell,* 145 Md.App. 1, 800 A.2d 803 (2002), illustrates how difficult application of such a five year statute of limitations can be. In that case, a firefighter who cleared toxic substances for the benefit of those who came behind him was diagnosed with a malignant esophageal tumor in May 1993. After surgery and nearly five years of "clear" checkups, he was diagnosed with pancreatic cancer in April 1998. He filed a special disability retirement claim on September 8, 1998.

On appeal from the grant of special disability benefits, we vacated the judgment and remanded. *See id.* at 6, 800 A.2d 803. The panel unanimously held that cancer qualifies as an "injury" under the statutory scheme. *See id.* at 15, 800 A.2d 803. A majority held that it was unclear whether Mitchell's pancreatic cancer was a new injury in that it was a primary cancer, or whether it was a manifestation of the original 1993 injury in that it was a metastasized cancer. *See id.* at 17, 800 A.2d 803. We remanded for that factual determination, instructing that if it "was metastatic, having originated in Mitchell's esophagus, we believe that Mitchell's claim for those benefits is time barred." [3] *Id.*

In doing so, we emphasized the predictability policy underlying statutes of limitation and the reasonableness of avoiding a constantly changing deadline that could conceivably be extended "for countless progressive diseases and degenerative conditions, as ... each time another organ or part of the body was invaded or affected during the course of an illness." *Id.* at 17–18, 800 A.2d 803. But we also recognized the inherent difficulty that absolute cut-off dates create.

[W]e are mindful of the unfortunate paradox that our ruling perpetuates today: Mitchell could not have filed his application for special disability benefits until he was disabled and, by that time, the statute of limitations for such claims had run. **That predicament is no doubt the lot of every claimant who has a work-related, progressively debilitating condition or disease that does not render him or her disabled within the statute of limitations** for special pension benefits. Indeed, it was precisely Marsheck's pre-

---

**3.** The dissent posited that the pancreatic cancer diagnosis was a separate injury, such that "when the injury in question is a latent occupational disease, the 'date of injury' ... is the date the injured person knew or should have known that he has contracted the disease." 145 Md.App. at 21, 800 A.2d 803. This debate over the date on which a disability-causing occupational disease occurs is factually inapplicable to Fedorowicz's case; this record establishes that Fedorowicz's disability resulted from a discrete accidental injury that occurred more than five years before the application was filed, the physical results of which Fedorowicz was aware at all times.

dicament. **The only difference is that Marsheck knew of her condition, and appellant did not. But that does not materially distinguish the two cases.** Because whether or not Mitchell knew that his cancer had spread, he would not have been able to file his claim, like Marsheck, until he was totally disabled.

**This of course seems unfair. But, under current law, we can do no more than point out the inequity of granting special disability benefits to those whose disabilities follow on the heels of job-related injuries, while denying them to those whose disabilities develop over time. The decision to extend the coverage of ... the Retirement Act is a legislative one, and therefore must be left to the appropriate legislative body to decide.** On this point, the words of the *Marsheck* Court bear repeating:

> The statute of limitations ... which excludes [Marsheck] from receiving her special disability benefits, was enacted by the City Council, not by this Court. We will not modify the disability system ad hoc to suit our sensibilities and pivot around the legislature's true intentions.

*Id.* at 18–19, 800 A.2d 803 (quoting *Marsheck* ).

### Fedorowicz's Interpretation Of The Statute

In an effort to avoid the five year deadline in SPP section 29–104(d)(2), Fedorowicz asserts that "[a] thorough review of SPP Title 29, Subtitle 1 ... in its entirety" leads to the conclusion that the limitations period does not apply to him. This is because his application was not *"filed by a member* or former member[,]" but by the MSP itself in accordance with SPP section 29–103(b), which provides that, "[i]f a member is unable to apply, the member's department head may complete and submit an application to the Board of Trustees for the member[.]" (Emphasis added.)

In support of his contention that he did not file the application, Fedorowicz cites his affidavit describing how the MSP Medical Director and Disability Retirement Coordinator "con-

trolled the process of applying[.]" Fedorowicz emphasizes that he

> wanted to continue his employment but his own department wanted him retired on accidental disability, so they ordered him to see their physician's to determine him disabled and ordered him to file paperwork for disability with them or risk being fired. It was not Fedorowicz who failed to file timely. If there was a failure, it was on the part of the MSP.

In Fedorowicz's view, the five year limitations period in section 29–104(d)(2) does not bar consideration of his application because (a) he "never sought retirement; his department thrust it upon him," (b) he was unable to apply due to the MSP's failure to timely conclude independent medical examinations, and (c) he was misled by the MSP to believe that the agency would apply on his behalf. Alternatively, the five year deadline was tolled by operation of a discovery rule, which applies "as a rule of reason" so that the clock on his claim did not begin to run until April 2001, when he discovered his disability through the MSP's actions.

### SRPS's Interpretation Of The Statute

The SRPS responds that there is no explicit or implicit exception to the five year limitations period in section 29–104(d)(2), under which Fedorowicz could be exempt from the statutory deadline on the basis of either the discovery rule or the role played by the MSP in his application. The discovery rule does not apply for all of the reasons set forth in *Marsheck*. Moreover, no exception may be made in Fedorowicz's case, because it was his duty to apply and he easily could have done so within the five years following his injury. "There is simply no prerequisite that an applicant need obtain any sort of 'finding of disability' from the member's employer, or submit to any examination by the employer before applying for disability." Whether the application was physically submitted to the Board by Fedorowicz himself or by the MSP is immaterial because the five year deadline governs in both circumstances.

### Discovery Rule

■ We agree with the SRPS, the ALJ, and the circuit court that the five year limitations period in SPP section 29–104(d)(2) is not subject to a discovery rule. Both the repose and the legislative balancing rationales articulated in *Marsheck* are equally applicable to this state statute given the similarity in language and purpose of those provisions.

We specifically reject Fedorowicz's contention that *Marsheck* is distinguishable on the facts and the law.[4] The dispositive fact in *Marsheck, Mitchell,* and this case is that each claim was filed after the five year limitations period expired. To be sure, there are different reasons for each claimant's late filing. But, as we observed in *Mitchell,* such differences are not material because the legislature has not allowed any exception based upon the claimant's reason for missing the deadline. To the contrary, the General Assembly eliminated just such an exception in 1997. *See* 1997 Md. Laws, ch. 158. Thus, any factual distinctions between Fedorowicz, Marsheck, and Mitchell are irrelevant to the legal analysis that controls all three cases.

As we recognized in *Mitchell,* even proof that Fedorowicz did not know and could not have known within the five year

---

**4.** Fedorowicz distinguishes his case from *Marsheck* on the following grounds:
- Marsheck was unable to report for work in any capacity for five months before she applied for accidental disability retirement, whereas Fedorowicz worked continuously even after he was medically determined to be disabled.
- Marsheck applied on her own behalf, whereas Fedorowicz was ordered to apply and was told at that time that MSP Retirement Benefits Coordinator Michelle Miller would do so on his behalf.
- Marsheck sought out her own medical evaluations by her own physicians, whereas Fedorowicz was ordered to undergo evaluations.
- Marsheck got an opinion that she was totally disabled before the five year limitations period ran, whereas Fedorowicz did not receive the necessary evaluations until after.
- Marsheck consulted an attorney before the deadline expired; Fedorowicz relied on the MSP's Medical Director and Disability Coordinator, who never informed him about the five year deadline and who advised him to "just wait" when there were only two weeks remaining in the five year filing period.

period that his injury would result in a qualifying disability could not have extended the statutory deadline. Accordingly, assuming *arguendo* that Fedorowicz's physical limitations did not become severe enough to warrant application for accidental disability retirement until late in the five year period, *Marsheck* and *Mitchell* teach that such circumstances do not permit the Board to disregard the five year deadline established by the legislature.

We do not agree with Fedorowicz that the remedial nature of accidental disability benefits requires a different reading of section 29–104(d)(2). The *Marsheck* Court rejected discovery rule, remedial purpose, and substantial compliance arguments similar to those made by Fedorowicz in this Court. The Court explained that, although "[r]emedial legislation, such as governs the retirement system here, must be construed liberally in favor of injured employees in order to effectuate the legislation's remedial purpose[,]" appellate courts "will not add provisions or tailor existing ones to change the mandatory nature of the statute's language in order to favor the disability claimant." *Id.* at 403, 749 A.2d 774. We find the decision and rationale articulated in *Marsheck* persuasive and therefore reject Fedorowicz's attempt to engraft a discovery rule onto SPP section 29–104(d)(2).

### Application Initiated Or Submitted By The Employer Agency

■ In addressing Fedorowicz's argument that the MSP's role in his application makes the five year limitations period inapplicable, we hold as a threshold matter that this application was filed by Fedorowicz rather than by the MSP. To be sure, section 29–103(a) permits an employer agency to submit an application on behalf of a "member who is unable to apply" himself. But we have not been directed to anything in this record that would suggest Fedorowicz was "unable to apply" on his own behalf.[5] To the contrary, unrebutted evidence

---

5. It is not the MSP, but the SRPS Board of Trustees and its Medical Board, who investigate accidental disability claims and determine

established that Fedorowicz remained able to submit his own application throughout the salient five year period and that the application bears his signature rather than that of his department head.

More importantly, even if we were to treat this application as having been submitted by the MSP on Fedorowicz's behalf, we would still apply the five year limitations period in SPP section 29–104(d)(2). A review of Title 29 makes it clear that an application *"submitted ... for* a member" pursuant to section 29–103(a)(3) must be treated as an application *"filed by"* that member under section 29–104(d)(2). (Emphasis added.) There is no separate procedural track for applications "submitted ... for" an employee by his agency. Such applications remain "[s]ubject to § 29–104[,]" so that the five year limitations period in section 29–104(d)(2) is equally applicable to all accidental disability claims, even when they are initiated by the employer agency or submitted to the Board by the employer agency.

### Conclusion

We reach the same difficult result as the *Marsheck* and *Mitchell* Courts reached in interpreting the analogous statute of limitations for claims by Baltimore City employees. SPP section 29–104(d)(2) is a statute of repose that balances the State's interest in compensating employees whose disabilities stem from workplace accidents with its countervailing interest in the predictability created by a statute of limitations. We hold that the five year period in SPP section 29–104(d)(2) may not be circumvented by the "discovery rule," evidence of "substantial compliance," the "rule of reason," or any other equitable or common law considerations. Nor can it avoided by narrowly reading the statute to exclude applications that were initiated or submitted by an employer agency.

---

whether a claimant is permanently disabled. *See* SPP § 29–105(2), 29–109(b)(1)–(2). They may arrange for independent medical evaluations. *See* SPP § 29–126(d)(1).

Thus, the limitations period began to run on July 19, 1996, the date of Fedorowicz's injury, and expired on July 19, 2001.[6] The Board, the ALJ, and the circuit court correctly ruled that Fedorowicz's application for accidental disability retirement benefits could not be considered because it was filed more than five years after the claimed accident.

To be sure, we share the sentiments expressed in *Marsheck* and *Mitchell* that application of such a five year deadline can penalize employees who admirably "tough it out" after an on-the-job injury; employees who, through little or no fault of their own, learn about their disability after the five year limitations period; and even, as in this case, employees who rely on allegedly inadequate advice and assistance by their employer agency during the application process. But the existence of such "hard cases" is an inherent feature of the statutory scheme—one that reflects a legislative choice between repose and recompense, and one that the Court of Appeals has explained we cannot ignore under the guise of statutory construction. Five years " 'represents the legislature's judgment about the reasonable time needed to institute' " an accidental disability retirement claim. *See Marsheck*, 358 Md. at 405, 749 A.2d 774. We reiterate that changing that deadline is the type of public policy decision that must come from the legislature rather than the judiciary.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

6. We do not address whether claimants like Fedorowicz may assert a claim directly against the employer agency that allegedly caused the application to be submitted late, subject to any applicable notice and governmental immunity restrictions.